IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-40236

Summary Calendar
_____

UNITED STATES OF AMERICA

                                        Plaintiff-Appellee,

                        versus

RUDOLPH CARL MAGNUSON,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
For the Eastern District of Texas
_____

September 20, 2002

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:

Rudolph Carl Magnuson pled guilty to one count of wire fraud, pursuant to a written agreement. Magnuson argues that the district court erroneously imposed a two-level sentencing enhancement for using "mass-marketing" in the commission of his offense and clearly erred in assessing a $20,000 fine. We affirm.

Magnuson operated an advance fee scheme, placing ads in grocery store tabloid newspapers promising interest-free loans. After collecting "application fees" and "deposits" from unwitting victims, Magnuson kept the money for his own use and did not extend

a loan to any applicants.

He objects to the district court's imposition of a two-level enhancement under former U.S.S.G. § 2F1.1(b)(3) for using "mass-marketing" in the commission of his offense.[1] The sentencing guidelines define mass-marketing as a "plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to (A) purchase goods or services; . . . or (C) invest for financial profit."[2] Magnuson argues that he did not engage in mass-marketing because placing a newspaper advertisement is passive, unlike solicitation by telephone, mail, or the Internet.

As a preliminary matter, we note that the definition of "mass-marketing" is not limited to the listed mediums–it explicitly contemplates "other means" of mass-marketing.[3] Moreover, Magnuson does not dispute that his advertisements reached a "large number of persons." The average circulation of one tabloid newspaper in which Magnuson advertised is 335,900 every six days.

Magnuson's lone argument is that § 2F1.1(b)(3) is limited to "active" rather than "passive" marketing. This view is derived from Judge Berzon's dissent in the Ninth Circuit's recent decision in *United States v. Pirello*.[4] Judge Berzon argued that the use of the

---

[1] Former U.S.S.G. § 2F1.1(b)(3) has since been repealed and replaced by current U.S.S.G. § 2B1.1(b)(2)(A)(ii).

[2] U.S.S.G. § 2F1.1 cmt. n.3.

[3] *United States v. Deming*, 269 F.3d 107, 109 (2d Cir. 2001).

[4] 255 F.3d 728 (9th Cir. 2001).

word "solicitation" in the guideline "denotes more than simply advertising" and "suggests some sort of one-on-one importuning."[5]

We decline to adopt such a restrictive view. The plain meaning of solicitation is to "solicit orders or trade, as for a business house."[6] Moreover, two of the mediums listed in the commentary note-mail and the Internet-are themselves passive and often lack the personal entreating required by Judge Berzon. A mass mailing to 300,000 people is no more active than an advertisement in a newspaper. Similarly, in a different context, we have recognized that many Internet websites are passive.[7] We agree with the majority in *Pirello* and the Second Circuit that § 2F1.1(b)(3) merely requires advertising that reaches a "large number of persons."[8] The district court did not err by imposing a two-level enhancement under § 2F1.1(b)(3).

Magnuson also argues that the district court clearly erred by imposing a $20,000 fine. District courts are directed to impose a fine in all cases, unless the defendant establishes that he will be unable to pay.[9] The defendant bears the burden of proving his inability to pay a fine, and may rely upon the PSR to establish his

---

[5] *Id*. at 733 (Berzon, J., dissenting).

[6] RANDOM HOUSE COLLEGE DICTIONARY 1250-51 (1982).

[7] *Mink v. AAAA Develop. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).

[8] *Pirello*, 255 F.3d at 731-32; *See Deming*, 269 F.3d at 109.

[9] U.S.S.G. § 5E1.2(a).

inability to pay.[10] Because the district court adopted the PSR in this case, the government was required to present evidence showing that Magnuson could, in fact, pay a fine.[11] Given that the PSR indicated that Magnuson had a net worth of $100,000, the government met its burden and the district court did not clearly err by imposing a $20,000 fine.

AFFIRMED.

---

[10] *United States v. Fair*, 979 F.2d 1037, 1042 (5th Cir. 1992).

[11] *Id.*