# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 30, 2015

Lyle W. Cayce
Clerk

No. 13-31083

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JOSE ROBERTO PACHECO-ALVARADO, also known as Jose Roberto Alvarado, also known as Jose Robert Alvarado-Alvarado,

Defendant – Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

No. 14-30478

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CESAR DE LA CRUZ, also known as Cholo de la Cruz, also known as Benjamin Espino-Montoya, also known as Rafael Villanueva, also known as Angel Espino, also known as Antonio Deltoro Lopez,

Defendant – Appellant.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, SMITH, and GRAVES, Circuit Judges.

Nos. 13-31083 & 14-30478

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this consolidated appeal Jose Pacheco-Alvarado and Cesar de la Cruz challenge sentences of fines imposed by a district court. De la Cruz also challenges as unreasonable his above-guidelines-range sentence of imprisonment. We AFFIRM Pacheco-Alvarado's sentence. We AFFIRM de la Cruz's sentence in part and REMAND in part for the limited purpose of correcting a clerical error in the written judgment.

I.

Pacheco-Alvarado pled guilty to one count of illegal reentry in violation of 8 U.S.C. § 1326(a). Pursuant to the United States Sentencing Guidelines ("Guidelines"), his presentence report ("PSR") assigned a total offense level of 10 and a criminal history category of III. It stated that he was subject to a mandatory special assessment of $100;[1] a statutory maximum fine of $250,000;[2] and a Guidelines fine range of $2,000 to $20,000.[3]

In a separate proceeding before the same judge, de la Cruz pled guilty to four counts of knowingly and intentionally distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and one count of being an alien illegally and unlawfully in the United States who knowingly possesses a firearm in violation of 18 U.S.C. § 922(g)(5). His PSR assigned a total offense level of 15 and a criminal history category of I, which produced a Guidelines imprisonment range of 18 to 24 months. The PSR stated that de la Cruz was subject to a mandatory special assessment of $100 for each of the five counts of conviction;[4] statutory maximum fines of $1,000,000 for one of the counts,[5]

---

[1] 18 U.S.C. § 3013.

[2] *Id.* at § 3563(a).

[3] U.S.S.G. § 5E1.2(c)(3).

[4] 18 U.S.C. § 3013.

[5] 21 U.S.C. § 841(b)(1)(C).

2

Nos. 13-31083 & 14-30478

$500,000 for one of the counts,[6] $250,000 each for two of the counts,[7] and $250,000 for the remaining count;[8] and a Guidelines fine range of $4,000 to $1,500,000.[9]

In each case the PSR concluded, based on an examination of available financial records and an independent investigation into the defendant's employment, vocational, and educational history, that the defendant had no assets—no ownership of vehicles, property, or any other tangible assets—and no monthly income. Both PSRs stated that "it does not appear that the defendant has the ability to pay a fine." The district court adopted the statements in each PSR as its findings of fact. Nevertheless, the district court imposed a fine on each defendant—$2,500 for Pacheco-Alvarado and $5,000 for de la Cruz—with a monthly payment schedule set at one-third of the defendant's prison earnings, conditional on the prisoner's being allowed to work while in prison. The court waived the interest requirement for each fine and pronounced identical conditions for both fines at sentencing:

> If the defendant is placed by the Bureau of Prisons at a facility where he can work and receive monetary compensation for that work during his term of imprisonment, payment of the fine shall be required at a monthly rate of at least one-third of any such earnings.
>
> Then beginning 60 days from the date that the defendant is released from custody, if he is not removed from the United States upon his release from prison, or if he reenters the United States following deportation, any unpaid balance shall be paid at a monthly rate calculated to ensure that the entire unpaid amount of the fine has been paid at the time his term of supervised release is completed. Additionally, the monthly installment payment is

---

[6] *Id.* at § 841(b)(1)(E).
[7] *Id.* at § 841(b)(1)(D).
[8] 18 U.S.C. § 3571(b)(3).
[9] U.S.S.G. § 5E1.2(c)(1) & (4)(A).

subject to increase or decrease depending on the defendant's ability to pay.

In imposing a fine, the Court recognizes that the defendant presently has limited financial means. If the defendant is placed at a Bureau of Prisons facility where he can work and receive some monetary compensation for that work while he is incarcerated, however, a portion of those earnings should be dedicated to payment of the fine.

Additionally, considering the defendant's reported prior work as [a contractor, in Pacheco-Alvarado's case, and a day laborer, in de la Cruz's case], and as a farmer on his family farm, and that he is presently only [24 years of age, in Pacheco-Alvarado's case, and 42 years of age in de la Cruz's case,] with no reported physical or mental health problems precluding gainful employment, the Court is unaware of any reason that he should not be able to pay the remainder of the fine amount in monthly installments upon his release from prison if for some reason he is not removed from the United States upon release, or if he later reenters the United States after being removed.

Although the district court orally pronounced a monthly schedule set at one-third of each defendant's wages, in the written judgment of conviction for de la Cruz the court included conflicting special instructions, which required payment "at a monthly rate of at least 1/2 of any such earnings." The written judgment for Pacheco-Alvarado was consistent with the court's oral pronouncement.

At sentencing, Pacheco-Alvarado objected to the $2,500 fine as unreasonable because he "does not have any financial recourse, anything right now. He earns enough to help his brothers and just [subsist]." De la Cruz also objected to his fine, but on more specific grounds:

  . . . [W]e also would object to the fine . . . that was imposed because the Court has already adopted the PSR and its findings of fact as true and correct. And the PSR states . . . that Mr. Cruz does not have the ability to pay. He's represented by the Federal Public

4

Nos. 13-31083 & 14-30478

Defender's Office. He's already been adjudged by the magistrate court that he is too poor to afford an attorney. He has no assets. According to a records check by the probation officer, he has no assets, no ownership of a vehicle, property, or other assets. He has a sixth grade education. If he is released back into this country, if he is given permission in this country, he would not be able to work to pay a fine unless he was given . . . work permit permission by the U.S. Government.

In terms of at the Bureau of Prisons . . . once Your Honor imposes the sentence, then Mr. Cruz transfers over to the Attorney General for the execution of that sentence . . .

And the Federal Bureau of Prisons [has] meetings with the defendants, their case managers, to decide how much can be paid in terms of a fine. And their rules and regulations are extensive, but it doesn't account for a fine being paid in the amount of one-third of whatever earnings that he makes . . . .

In de la Cruz's case, the PSR did not identify any factors that would warrant a departure or variance from the Guidelines imprisonment range of 18 to 24 months. Nevertheless, the district court imposed an above-Guidelines-range sentence of 60 months' imprisonment, followed by three years of supervised release. Recognizing that this sentence fell above the recommended range, the district court explained:

Look, the problem with this case is that the defendant really has a triple threat here—he's pulled a hat trick—in terms of not only being here illegally, but participating in the distribution of some very serious drugs, which I've already commented on this morning in connection with the prior sentencing, oxycodone, hydrocodone, and on top of that, just for good measure, to throw in a firearm.

So the Court's concern is not simply that the defendant is here illegally; it's that he's here illegally committing crimes of some gravity, and the Court has to factor that into the sentence . . .

This sentence is imposed outside and in variance of the advisory guideline sentence. . . . The court finds that the sentence imposed

Nos. 13-31083 & 14-30478

reflects the nature and serious circumstances of these offenses, which the Court has already referred to—the seriousness of these offenses, including him being here illegally, the issue of the firearm, as well as the distribution of drugs that have also been a plague on the community, and particularly in this part of the country, and particularly among young people.

De la Cruz objected to the above-range sentence.

Both Pacheco-Alvarado and de la Cruz timely appealed.

II.

We address first the statutory division of authority between district courts and the Federal Bureau of Prisons ("BOP") with regard to the imposition and collection of criminal fines. Under 18 U.S.C. § 3572 district courts have the authority to "determin[e] whether to impose a fine, and the amount, time for payment, and method of payment of a fine"—a determination guided by several enumerated factors.[10] District courts are also authorized to set a schedule for payment:

> A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule.[11]

At the same time, "[a]fter a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."[12] And under 18 U.S.C. § 3612, the Attorney

---

[10] *See* 18 U.S.C. § 3572(a).

[11] *Id.* at § 3572(d)(1).

[12] *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)); *see* 18 U.S.C. §§ 3574, 4042.

General is "responsible for the collection of an unpaid fine."[13] The Attorney General, in turn, has promulgated rules through the BOP establishing the Inmate Financial Responsibility Program ("IFRP"), a work program designed to "help [the] inmate develop a financial plan" to meet certain financial obligations, including the payment of court-imposed fines.[14]

IFRP regulations provide for a detailed process by which an inmate's prison earnings are allocated to pay his financial obligations. First, at the inmate's initial classification, unit staff reviews the inmate's existing financial obligations and develops a plan for their payment, "ordinarily to be paid in the [following] priority order": (1) special assessments imposed under 18 U.S.C. § 3013; (2) court-ordered restitution; (3) fines and court costs; (4) state or local court obligations; and (5) other federal government obligations.[15] Next, each month unit staff subtracts from the inmate's trust fund account the inmate's minimum payment schedule. "Ordinarily, the minimum payment schedule for non-UNICOR and UNICOR grade 5 inmates will be $25.00 per quarter . . . Inmates assigned grades 1 through 4 in UNICOR ordinarily will be expected to allot not less than 50% of their monthly pay to the payment process."[16] This minimum payment, however, may exceed the "ordinary"

---

[13] This responsibility only covers fines certified through 18 U.S.C. § 3612(b), but given that all fines over $100 must be certified, and no party claims that the instant fines were not certified, we assume, without deciding, that the instant fines were certified.

[14] 28 C.F.R. § 545.11.

[15] *Id.* at § 545.11(a).

[16] *Id.* at § 545.11(b).

"Each sentenced inmate who is physically and mentally able is . . . assigned to an institutional, industrial, or commissary work program." *Id.* at § 545.23. For purposes of standardization across the federal prison system, "[e]ach inmate work position is assigned one of four pay grade levels"—with "Grade 1" positions receiving the highest pay—according to factors like "the position's educational and vocational requirements, physical demands, working conditions . . . and the degree of responsibility held by the inmate worker." *Id.* at § 545.26. UNICOR, also known as Federal Prison Industries (FPI), is a wholly owned government corporation designed to employ and "provide meaningful work" to federal inmates in an industrial setting. 28 C.F.R. § 345.10. "Approximately 16% of work-eligible

amount for all grades and classifications of work, "taking into consideration the inmate's specific obligations, institution resources, and community resources."[17] Finally, after subtracting the inmate's minimum monthly payment, unit staff excludes from its assessment $75.00 per month, which is deposited into the inmate's trust fund account to afford the inmate access to the Inmate Telephone System.[18]

Appellants claim that in setting a monthly payment schedule for the fines the district court impermissibly encroached on the authority of the BOP. Appellants first argue that the district court's orders function as an improper "garnishment" of their prison wages. We disagree. While a district court cannot order the BOP to garnish a defendant's wages absent the defendant's default on paying his fine,[19] the district court in this case did not so order. Instead, it imposed a monthly payment schedule as a proportion of future prison wages conditioned upon those wages materializing in fact. It did not attempt to impermissibly enforce its order.

Appellants next urge that the condition scheduling payment of at least one-third of their monthly prison earnings interferes with carefully calibrated IFRP procedures. Again we disagree. The district court has the authority to impose a fine and provide for a payment schedule. Although the BOP is responsible for collection of unpaid fines, IFRP regulations expressly countenance deviations from "ordinary" processes when called for to meet an

---

inmates work in FPI factories." *See* "Custody and Care," Federal Bureau of Prisons: UNICOR, *available at* http://www.bop.gov/inmates/custody_and_care/unicor.jsp. Other inmates receive "performance pay" assignments, contributing to the day-to-day operation of the prison "(e.g., carpentry, plumbing, food service.)." *See* 28 C.F.R. §§ 545.21, 545.22.

[17] 28 C.F.R. § 545.11(b).

[18] *Id.*

[19] *See, e.g., United States* v. *Badger*, 581 F. App'x 541, at *2 (6th Cir. 2014).

inmate's specific obligations. We cannot conclude that the district court's order was improper.[20]

### III.

Appellants argue that the fines imposed were unreasonable. We review under the two-part test set out in *Gall* v. *United States*.[21] First, we determine whether the sentence was procedurally proper, which means:

> [t]hat the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.[22]

Second, we consider the substantive reasonableness of the sentence. We "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range."[23] For "properly calculated, within-[G]uidelines sentences," we employ a presumption of reasonableness, which "is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."[24]

---

[20] The parties dispute the applicable standard of review for this issue. Appellants couch their argument in jurisdictional terms, urging for review de novo. Because Appellants did not preserve this argument by objection below, the government contends we ought review for plain error. Finding no conflict between the district court's order and the BOP's administrative responsibility, we need not and do not address the question of what standard applies.

[21] 552 U.S. 38 (2007).

[22] *Id.* at 51.

[23] *Id.*

[24] *United States* v. *Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

Nos. 13-31083 & 14-30478

If the defendant properly objects to the sentence before the district court, we review for an abuse of discretion.[25] Under abuse of discretion review, "a district court's interpretation or application of the [ ] Guidelines is reviewed de novo, and its factual findings . . . are reviewed for clear error."[26] "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole."[27] If the defendant "fail[s] to object at sentencing to the reasonableness of his sentence," we review only for plain error.[28]

### A.

De la Cruz challenges his fine on procedural grounds.[29] He argues that because the district court adopted the statements in the PSR as its findings of fact, among them that de la Cruz lacked a present ability to pay a fine, it erred in imposing the fine. As he presented this objection at sentencing, we review for an abuse of discretion.

We have previously advised that where a court adopts a PSR that "contains fact findings suggesting a present inability to pay," but does not affirmatively recommend against imposition of a fine, the court may impose a fine, but should explain how its decision comports with the PSR's findings.[30] We "will not reverse the fine merely because no express finding was made but will review the finding of ability to pay necessarily implied by such

---

[25] *United States* v. *Peltier*, 505 F.3d 389, 391 (5th Cir. 2007).

[26] *United States* v. *Cisneros-Guiterrez*, 517 F.3d 751, 764 (5th Cir. 2008) (citation omitted).

[27] *United States* v. *Holmes*, 406 F.3d 337, 363 (5th Cir. 2005) (citation omitted).

[28] *Peltier¸* 505 F.3d at 391.

[29] Pacheco-Alvarado does not raise a procedural reasonableness challenge.

[30] *United States v. Voda*, 994 F.2d 149, 155 n.14 (5th Cir. 1993) (quoting *United States v. Matovsky*, 935 F.2d 719, 722 (5th Cir. 1991); *see United States v. Brantley*, 537 F.3d 347, 352 (5th Cir. 2008); *United States v. Hodges*, 110 F.3d 250, 251 (5th Cir. 1997) ("The PSR does not make a recommendation regarding a fine, but rather states that 'it would be difficult' for the defendant to pay, and notes that if the defendant found gainful employment upon release from prison, his ability to pay would be increased."); *United States v. Fair*, 979 F.2d 1037, 1040-41 (5th Cir. 1992).

consideration."[31] Here, consistently with the PSR's factual findings, the district court expressly recognized de la Cruz's *present* inability to pay. In imposing the fine, the court conditioned payment on de la Cruz's ability to work while in prison and on his earning potential after release. These considerations necessarily imply a conclusion about de la Cruz's *future* ability to pay—one that does not conflict with the facts contained in the PSR. By making this clear the district court complied with our procedural requirements.

## B.

Both Appellants challenge the substantive reasonableness of the fines. They argue that the district court erred in concluding that, if allowed to work in the future, they would be able to pay. Under the Guidelines, "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."[32] To be clear, "[t]he defendant bears the burden of proving his inability to pay a fine, and he may rely upon the PSR to establish his inability to pay."[33] It is undisputed that in both cases the fine imposed was within the recommended Guidelines range. We therefore employ a presumption of reasonableness in each case.[34]

## 1.

Because de la Cruz objected to his fine on the grounds that he lacked both present and future ability to pay, we review for an abuse of discretion. The district court based its conclusion about de la Cruz's future ability to pay on two considerations: (1) his prospective prison earnings, and (2) his earning potential after release from prison if he is not removed from the United States

---

[31] *Voda*, 994 F.2d at 155 n.14.

[32] U.S.S.G. § 5E1.2(a).

[33] *United States* v. *Magnuson*, 307 F.3d 333, 335 (5th Cir. 2002) (citation omitted).

[34] *United States* v. *Camero-Renobato*, 670 F.3d 633, 636 (5th Cir. 2012).

or if he is removed and later reenters. De la Cruz challenges the district court's findings on both fronts.

First, with regard to prospective income from work during imprisonment, de la Cruz notes that as an illegal alien subject to an order of removal, he cannot be considered for a work assignment with UNICOR, making him eligible only for a lower-paying, non-UNICOR work assignment while incarcerated.[35] He urges that income from a non-UNICOR work assignment could not plausibly support his ability to pay the fine. We disagree. Courts within and beyond our circuit have held that a sentencing court may base a conclusion about a defendant's future ability to pay a fine on prospective prison wages.[36] Moreover, the district court conditioned payment on de la Cruz's being allowed to work and receive monetary compensation, and it ordered a proportional—as opposed to absolute—monthly payment schedule of one-third of his prospective prison earnings. De la Cruz points to nothing that establishes it would be impossible or even implausible for him to comply with the district court's order in the event he works and receives wages in a non-UNICOR work assignment.

Second, with regard to his earning potential while subject to supervised release, de la Cruz argues that as a previously deported illegal alien with aggravated felony convictions who is currently under an order of removal, it is

---

[35] "An inmate or detainee may be considered for assignment with FPI unless the inmate is a pretrial inmate or is currently under an order of deportation, exclusion, or removal." 28 C.F.R. § 345.35(a). When de la Cruz illegally reentered the United States after having been removed to Mexico in 2012, the prior order of removal was automatically reinstated. 8 U.S.C. § 1231(a)(5).

[36] *United States v. Reyes*-Sanchez, 544 F. App'x 284, 285 (5th Cir. 2013); *United States v. Khokhani*, 349 F. App'x 430, 432 (11th Cir. 2009); *United States* v. *Brantley*, 537 F.3d 347, 352-53 (5th Cir. 2008); *United States v. Aguilar*, 71 F.3d 879, 1995 WL 727505, at *1, (5th Cir. Nov. 24, 1995); *United States* v. *Tosca*, 18 F.3d 1352, 1355 (6th Cir. 1994); *United States* v. *Taylor*, 984 F.2d 618, 622 (4th Cir. 1993) ("The courts are presumed to have some passing familiarity with the conditions of confinement at a federal prison, including how much prisoners get paid.").

unlikely he will be allowed to remain in the United States,[37] and that if he does lawfully remain or reenter, it is unlikely that he will be able to lawfully obtain employment.[38] As an initial matter, we have previously indicated that "the fact of deportability alone does not prevent the imposition of a fine."[39] And although de la Cruz accurately describes the situation he likely will face upon his release from prison, we cannot conclude that de la Cruz has met his burden to overcome the presumption of reasonableness by demonstrating his inability to pay.

De la Cruz worries that he might be forced to violate the law in order to comply with the district court's order; that if he somehow remains in the United States during his term of supervised release, he might have to obtain unlawful employment to earn income to satisfy any remaining balance of the fine. We do not read the district court's order to require this absurd result.[40] Among the conditions of de la Cruz's supervised release, the court required that if he remains in the United States he must "work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons." We read the fine condition requiring payment of any remaining balance during the term of de la Cruz's supervised release in light of the condition of supervision requiring him to obtain regular, lawful employment, unless excused. Bolstering this reading, the district court expressly allowed that "the monthly installment payment amount is subject to

---

[37] *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii) & (B)(i) (ineligible for asylum), 1229b(a)(3) (ineligible for cancellation of removal for certain permanent residents), 1231(b)(3)(B) (ineligible for withholding of removal where alien's life or freedom would be threatened).

[38] *See id.* at § 1324a(a)(1) & (h)(3) (unlawful for person to hire an alien unauthorized for employment).

[39] *United States* v. *Lopez-Flores*, 70 F. App'x 236, 237 (5th Cir. 2003) (citing *United States* v. *Thompson*, 227 F.3d 43 (2d Cir. 2000)).

[40] *Cf. Atchison v. Collins*, 288 F.3d 177, 181 (5th Cir. 2002) (noting "the common mandate of statutory construction to avoid absurd results") (citation omitted).

increase or decrease depending on the defendant's ability to pay." Finally, in support of its finding regarding de la Cruz's earning potential from lawful employment after his release, the court cited his "prior work as a day laborer, and as a farmer on his family farm, and that he is presently only 42 years of age with no reported physical or mental health problems precluding gainful employment." De la Cruz fails to show that the court erred in so finding.

### 2.

Pacheco-Alvarado objected to his fine at sentencing based on his present inability to pay. He did not object to the district court's conclusion that, if allowed to work during and after imprisonment, he would in the future be able to pay. As his objection did not give the district court the opportunity to address the gravamen of the argument he now presents on appeal, we review only for plain error.[41] We have previously upheld, on plain error review, fines based in part on the district court's conclusion that the defendant could make payments from prison wages.[42] This, in addition to the conclusion we reached above regarding an identical challenge from de la Cruz, directs the same disposition here. The district court did not plainly err in imposing the fine based on Pacheco-Alvarado's future ability to pay.

### IV.

De la Cruz requests a limited remand to correct a clerical error in the written judgment, which conflicts with the district court's oral pronouncement regarding the fine. "[W]hen there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls."[43]  We remand for the limited purpose of correcting the written judgment to reflect the monthly

---

[41] *See Puckett v. United States*, 556 U.S. 129, 134-35 (2009).

[42] *See United States v. Reyes*-Sanchez, 544 F. App'x 284, 285 (5th Cir. 2013); *United States* v. *Brantley*, 537 F.3d 347, 352-53 (5th Cir. 2008).

[43] *United States* v. *Martinez*, 250 F.3d 941, 942 (5th Cir. 2001).

payment schedule set at one-third of de la Cruz's prison earnings as ordered in the court's oral pronouncement.[44]

V.

Finally, de la Cruz challenges the substantive reasonableness of his 60-month sentence of imprisonment, which falls above the recommended Guidelines range of 18 to 24 months indicated in the PSR.

We "consider the totality of the circumstances, including the extent of any variance from the [G]uidelines range.  A deviation from the Guidelines range will not alone make a sentence substantively unreasonable."[45] The district court must explain its reasons for deviation, however, which "should be fact-specific and consistent with the sentencing factors enumerated in [18 U.S.C. §] 3553(a)."[46] "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."[47]

The district court provided a lengthy and detailed explanation for its deviation from the Guidelines, focused on the factors enumerated in 18 U.S.C. §§ 3553(a)(1), "the nature and circumstances of the offense," and 3553(a)(2)(A), "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." We have affirmed upward departures of comparable magnitude based on similarly specific explanations by district courts dealing with

---

[44] *See United States* v. *Powell*, 354 F.3d 362, 372 (5th Cir. 2003).
[45] *United States* v. *Rhine*, 637 F.3d 525, 529 (5th Cir. 2011) (quoting *United States* v. *Brantley*, 537 F.3d 347, 349 (5th Cir. 2008)) (internal quotation marks omitted).
[46] *United States* v. *Smith*, 440 F.3d 704, 707 (5th Cir. 2006).
[47] *Id.* at 708.

## Nos. 13-31083 & 14-30478

analogous fact situations.[48] We cannot conclude that the sentence was unreasonable.

### VI.

Pacheco-Alvarado's sentence is AFFIRMED. De la Cruz's sentence is AFFIRMED in part and REMANDED in part for the limited purpose of correcting a clerical error in the written judgment.

---

[48] *See, e.g.*, *United* States v. *Verastegui*, 201 F. App'x 272, 273 (5th Cir. 2006).

Nos. 13-31083 & 14-30478

GRAVES, Circuit Judge, specially concurring.

I write separately to express my understanding of the majority opinion that the relevant earnings from which the one-third payment would be deducted would consist of earnings remaining after the subtraction of any amounts excluded from assessment under the regulations. *See* 28 C.F.R. § 545.11(b).