In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3692

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SALLY IRIRI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:15-cr-00038-jdp-1 — **James D. Peterson**, *Judge.*

ARGUED MAY 27, 2016 — DECIDED JUNE 9, 2016

Before POSNER and FLAUM, *Circuit Judges*, and ALONSO, *District Judge*.[*]

POSNER, *Circuit Judge*. The defendant pleaded guilty to federal wire fraud, 18 U.S.C. § 1343, was sentenced to 120 months in prison (the statutory maximum is twice that—20 years), and appeals.

---

[*] Of the Northern District of Illinois, sitting by designation.

Over a period of approximately 20 months from 2013 to 2015 she and her accomplices defrauded a number of persons in the United States and Canada whom they had met on dating websites. The schemers had created fake profiles on legitimate Internet dating services and posing as their fake profiles had developed close relationships with and expressed strong romantic emotions for persons whom they proceeded to defraud in a variety of ways, as by persuading them to wire money to bank accounts controlled by the schemers to help their fictitious selves deal with equally fictitious personal tragedies or take advantage of fictitious money-making opportunities. As in *United States v. Jackson*, 95 F.3d 500, 507 (7th Cir. 1996), the schemers, including the defendant, "repeatedly victimiz[ed] some of the same people" by hitting them up for money again and again.

At sentencing the district judge focused on 21 of the defendant's victims who had either dealt personally with her or transferred money to her accounts, and who had lost a total of some $2.2 million. At the time of sentencing these victims ranged in age from 47 to 71. Fourteen submitted victim-impact statements, where we read, for example, in four of them: (1) "the emotional and mental anguish they have caused me was so profound that I attempted to kill myself to make everything go away." (2) "I had invested a large amount of money into retirement accounts and was able to live a comfortable life. As of today—I have No retirement. No savings. No money." (3) "Besides the monetary implications for my planned retirement I think the worst issue is the [e]ffect on my emotional health. It has been a terrible blow to my self-esteem and I suffer bouts of depression and generalized anxiety. I have been unable to share the burden of this

mistake I've made with any of my family." (4) "There is not a day that goes by that I don't think about this."

At sentencing a federal judge is required to compute the defendant's guidelines range though not required to give a sentence within that range, as distinct from having to give a sentence within the statutory sentencing range. After various adjustments the defendant's guidelines range was determined to be 78 to 97 months. One of the adjustments was the judge's decision to add a two-level vulnerable-victim enhancement. U.S.S.G. § 3A1.1(b)(1). Had it not been for that enhancement the guidelines range would have been only 63 to 78 months. Section 3A1.1(b) of the guidelines requires a vulnerable-victim enhancement if, as explained in the Sentencing Commission's commentary on the rule, the victim of a defendant's crime is "unusually vulnerable due to age, physical or mental condition, or … is otherwise particularly susceptible to the criminal conduct," and the defendant "knows or should have known of the victim's unusual vulnerability." U.S.S.G. § 3A1.1 Application Note 2.

"Elderly victims satisfy the requirements of § 3A1.1(b)(1), especially when their financial investments and financial security are at issue." *United States v. Sims*, 329 F.3d 937, 944 (7th Cir. 2003). The elderly are a frequent target of scammers and frequently qualify as vulnerable victims. See, e.g., *United States v. Sullivan*, 765 F.3d 712, 717 (7th Cir. 2014); *United States v. Rumsavich*, 313 F.3d 407, 411–14 (7th Cir. 2002).

The judge didn't stop with the guidelines enhancement, however; deeming it inadequate given the gravity of the defendant's defrauding of her 21 victims, he sentenced her to 10 years in prison—23 months above the top of her guide-

lines range, which was, as noted above, 97 months including the vulnerable-victim enhancement.

The defendant objects to that enhancement but to nothing else in the sentence, such as the conditions of supervised release that the judge imposed, the restitution that he ordered, or even the 23 months that the judge added to the top of the defendant's guidelines range. Although the victim of a scheme to defraud is likely to be vulnerable—that is, deficient in the experience, common sense, or support group that prevents most people from falling victim to scam artists—the guideline enhancement is limited to the "unusually" vulnerable victim. But that is an accurate description of the defendant's victims, or at least of many of them. Age, lack of sophistication, and personal loss (one was a widow and another had lost his entire family) on the part of the victims, coupled with the defendant's skillful employment of electronic media, rendered her targets helpless—proof they were unusually vulnerable. Her own lawyer described her conduct as brazen. As in *United States v. Sullivan*, *supra*, 765 F.3d at 717, the defendant targeted elderly and unsophisticated people—and admitted to the police that she'd been advised to concentrate on people who were vulnerable and wanted someone to listen to them. Her lawyer said at the sentencing hearing that his client had targeted people "because they were older and had money." As in *United States v. Christiansen*, 594 F.3d 571, 575 (7th Cir. 2010), "she became intimately familiar with her marks before she let them continue in her scheme because she wanted to ensure she only preyed upon the most vulnerable."

The district judge emphasized that the defendant had "targeted people of a certain age and older, … some … as

old as 71 or 66, and so … they were arguably vulnerable by virtue of the[ir] age. But I think that the whole point of the conduct here was to identify people who were vulnerable for many reasons," such as "because they were lonely or … perhaps unsophisticated about the use of Internet communications as a means of perpetrating scams. So I think that in fact all of the victims here in this case were chosen because they were particularly vulnerable."

The sentencing judge cannot be criticized for adding almost two years to the top of the defendant's guidelines sentence. Not only is a federal judge not *bound* to give a sentence within the applicable guidelines range; he is not *permitted* to do so without first considering the sentencing factors in 18 U.S.C. § 3553(a). See *Gall v. United States*, 552 U.S. 38, 49–50 (2007). One factor is the need for the sentence "to afford adequate deterrence to criminal conduct." § 3553(a)(2)(B). The scheme in which the defendant participated was extremely lucrative, and even if the slogan attributed (probably incorrectly) to P. T. Barnum that "There's a sucker born every minute" is an exaggeration, it is obvious that in this nation of 324 million people a very large number of persons are unusually vulnerable to scams, a fact that magnifies the prospective profits of the scammers (unless there are too many of them).

The richer the potential criminal haul, the greater the need for long sentences even if one acknowledges as one must that many criminals have very high discount rates, which means they attach little importance to costs or benefits likely to be realized only in what they consider the far future, such as during the second half of a 10-year prison sentence. That's likely to make them difficult to deter even by

the threat or imposition of long sentences. But there will be *some* deterrence; and anyway deterrence is only one of the sentencing factors in section 3553(a); another is the need for the sentence "to protect the public from further crimes of the defendant" by incapacitating him or (in this case) her. § 3553(a)(2)(C). That is of particular importance in the case of crimes of fraud, because perpetrators of fraud do not age out of criminal activity the way violent criminals, such as members of drug gangs, are apt to do. Ten years from now the defendant will be no less capable of fraudulent scheming than she was when she committed the crimes for which she has been sentenced.

Granted, she is likely to be deported upon her release from prison, because she is not an American citizen (she is Nigerian, and almost certain to be deported to Nigeria). Yet, deportation may not prevent her from continuing to prey on Americans. The district judge observed that "there might now be some barriers to opening a United States bank account from Nigeria or sending money to Nigeria, but why do you [the defendant's lawyer] say that no one will deal with Ms. Iriri after this? She's still very articulate, a talented writer. She will have the skills that she put to such use so effectively in this case, she'll still have those skills. She can … do the same thing from Nigeria. … And so I think that one of the things that I have to do is protect the public for a particularly long period of time, because I think that Ms. Iriri's skills will endure beyond whatever term of imprisonment I impose. And I think that she will, even from Nigeria, represent an ongoing risk to the [American] public that she could perpetrate another similar fraud. And so I think that I have to pay some attention to protecting the public, and I also think that the crime that Ms. Iriri perpetrated was a particu-

larly serious one that I don't think is really fully reflected in the guidelines." And regarding his upward departure from the guidelines range he explained that "the impact on the victims, although considered under the guidelines to the extent that the guidelines contemplate vulnerable victims … doesn't actually fully appreciate or really contemplate the specific emotional and financial impact on the victims, and so that is the basis for my departure from the guideline range."

The judgment of the district court is

AFFIRMED.