In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1299

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OLAYINKA I. SUNMOLA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:13-cr-30272-DRH-1 — **David R. Herndon**, *Judge.*

ARGUED JANUARY 19, 2018 — DECIDED APRIL 16, 2018

Before BAUER, MANION, and ROVNER, *Circuit Judges*.

BAUER, *Circuit Judge.* A grand jury charged Olayinka
Sunmola with an eight-count indictment in relation to an
online dating scheme. Three days into trial, Sunmola pleaded
guilty to all eight counts. Applying a number of enhancements
and taking into consideration other § 3553(a) factors, the
district court sentenced Sunmola to 324 months in jail with an

adjusted restitution payment of $1,669,050.98. Sunmola now appeals the district court's application of four sentencing enhancements, restitution calculation, and application of general deterrence in his final sentencing. For the following reasons, we affirm.

## I.  BACKGROUND

Starting in March 2008, Sunmola carried out an international online romance scheme from the Republic of South Africa, targeting middle-aged women in the United States, specifically in Georgia and Illinois. Sunmola and his co-conspirators created profiles on dating websites under fictitious names and led women to believe they were successful businessmen. Sunmola often used pictures of men in U.S. military uniforms as part of his online profile. After gaining the women's trust, Sunmola and his co-conspirators would ask for money and merchandise. These women would ship electronics and make electronic fund transfers under the false claims of financial distress.

In some instances, Sunmola sexually exploited the victims. He persuaded one woman to pose in a sexually suggestive manner in front of a web camera. Unbeknownst to the victim, he recorded her, posted the video to the internet, and sent a link to her and her relatives with an extortion demand, promising that "by the time he was finished with her she would want to kill herself." He posted nude photos obtained from another woman online, and threatened to post photos of a third woman. During the investigation, authorities also discovered evidence of credit card fraud affecting various businesses.

On November 20, 2013, a grand jury sitting in the Southern District of Illinois charged Sunmola in an eight-count indictment with conspiracy, in violation of 18 U.S.C. § 371 (Count One); mail fraud, in violation of 18 U.S.C. §§ 1341 and 1342 (Counts Two through Four); wire fraud, in violation of 18 U.S.C. §§ 1343 and 1342 (Counts Five through Seven); and interstate extortion, in violation of 18 U.S.C. § 875(d) (Count Eight).

On August 9, 2014, authorities arrested Sunmola while he was traveling in London and transferred him to the custody of the United States on February 26, 2015. His initial appearance and arraignment were held on March 4, 2015. He then waived his rights to a detention hearing and was ordered detained pending trial.

Trial commenced on February 29, 2016. Three days into trial, Sunmola openly pleaded guilty to all counts. The judge asked Sunmola questions to ensure he knowingly and voluntarily entered the pleas. The Government established a factual basis for the pleas, Sunmola admitted to the essential elements of each offense, and the judge accepted the guilty pleas without a plea agreement. The probation officer filed the initial PSR on July 8, 2016. However, through a series of objections and amendments, the parties were working from the fifth amended PSR when Sunmola's sentencing hearing was scheduled to be held.

Both parties and the district court agreed that the sentencing hearing should be held in two stages. On August 12, 2016, the Government presented its evidence, including victim impact testimony and expert testimony on the psychological

impact of Sunmola's scheme on the victims. On February 2, 2017, the district court held the second half of the sentencing hearing where the Government's case agent, United States Postal Inspector Adam Latham, testified under oath. Latham verified the factual accuracy of the Government's sentencing memorandum, the Government's responses to Sunmola's objections to the PSR, and an addendum to the PSR containing 39 additional victims' losses.

After all the testimony and evidence was presented, the judge considered and overruled each of Sunmola's outstanding PSR objections, largely adopting the findings of the probation officer and, in some instances, the Government's responses. The judge applied a four-level leadership enhancement, a two-level enhancement for acting on behalf of a government agency, a four-level substantial financial hardship enhancement, a two-level vulnerable victim enhancement, a 16-level enhancement for an intended loss of $2,054,972.66, and a two-level enhancement due to Sunmola committing the offense outside of the United States. With a base offense level of seven, the application of the enhancements resulted in a total adjusted offense level of 37 and with no prior convictions, a category I criminal history.

The judge also granted two upward departures the Government requested, one for psychological injury to a victim and a second for gratuitous infliction of injury to a victim. These upward variances resulted in a Guidelines range of 262 to 327 months. The Government advised the judge that the clerk of the court had possession of $220,000 liquidated assets. The defendant then gave a brief allocution.

Before making a final determination, the judge noted the importance of general deterrence due to Sunmola's continued contact with individuals in Nigeria. Taking everything into consideration, the judge sentenced Sunmola to 324 months' imprisonment and ordered restitution in the amount of $1,707,260.98. The district court later amended the judgment to $1,669,050.98 to match the amount stated in the PSR.

Sunmola now appeals: the four-level "substantial financial hardship" enhancement (U.S.S.G. § 2B1.1(b)(2)(B)); the two-level "vulnerable victim" adjustment (U.S.S.G. § 3A1.1(b)(1)); the two-level enhancement for acting on behalf of a government agency (U.S.S.G. § 2B1.1(b)(9)(A)); the four-level aggravating role adjustment for acting as the organizer or leader (U.S.S.G. § 3B1.1(a)); the loss calculation (U.S.S.G. § 2B1.1(b)(1)(I)); and the application of general deterrence under § 3553(a).

## II.  DISCUSSION

### A.  Enhancement Objections

We review a district court's legal interpretation of the Sentencing Guidelines *de novo*, and its factual determinations underlying the application of the Guidelines for clear error. *United States v. Harper*, 766 F.3d 741, 744 (7th Cir. 2014). "A district court may draw reasonable inferences from the record." *United States v. Minhas*, 850 F.3d 873, 878 (7th Cir. 2017).

### 1. Substantial Financial Hardship Enhancement Under § 2B1.1(b)(2)(B)

Sunmola argues that the district court improperly applied the four-level "substantial financial hardship" enhancement due to insufficient and unsubstantiated facts. Section 2B1.1(b)(2)(B) applies if the offense resulted in "substantial financial hardship to five or more victims." Factors to consider when applying this enhancement listed in § 2B1.1's Application Note 4(F) include: insolvency, bankruptcy, substantial loss to savings, substantial changes to employment or living circumstances, and substantial harm to the ability to obtain credit.

In *Minhas*, the defendant defrauded people by booking vacations, only to cancel the trips without the victims' knowledge. 850 F.3d at 875. At sentencing, the district court relied on trial testimony and victim impact statements in finding the substantial financial hardship enhancement appropriate. *Id.* at 878. The defendant argued that the district court lacked "sufficient evidence from which to infer that the victims were in similar economic positions." *Id.* While we face a slightly different issue, whether the judge had sufficient evidence to substantiate his findings, rather than analyzing the victims' economic positions, we find *Minhas* instructive.

Here, the court adopted the findings in the PSR, which listed seven victims who suffered substantial financial hardship. Some of these victims testified at trial and others submitted victim impact statements. All of these victims reported a loss of at least one, if not more, of the enumerated factors under the Application Note. Sunmola specifically argues that much of the evidence the judge relied on was not verified by

the Government as true. However, "evidentiary standards at sentencing are more relaxed than at trial." *Id*. The district court has great latitude in making factual determinations and may draw conclusions from evidence presented at a sentencing hearing. *Id*. (*see also United States v. Halliday*, 672 F.3d 462, 475 (7th Cir. 2012)). "We require only that the information considered has sufficient indicia of reliability to support its probable accuracy." *United States v. Statham*, 581 F.3d 548, 553 (7th Cir. 2009). With this discretion afforded to the district court, and having relied on the same form of evidence in *Minhaus*, we find the district court made appropriate factual findings from the testimony and victim impact statements.

Sunmola also argues he lacked an opportunity to effectively investigate and contest the claims made against him. However, Sunmola had the original PSR, which contained these findings, six months before his sentencing hearing, giving him more than sufficient time to effectively investigate these claims. Thus, the district court did not clearly err in applying the "substantial financial hardship" enhancement.

### 2. Vulnerable Victims Enhancement Under § 3A1.1(b)(1)

Sunmola next argues the district court erroneously applied the "vulnerable victims" enhancement. Section 3A1.1's Application Note 2 defines a "vulnerable victim" as "a person … who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." The Note gives two examples of when the adjustment should apply, both of which are instances where the defendant targets specific victims. U.S.S.G. § 3A1.1 cmt. n.2.

In contrast, the Note states the enhancement is not applicable in cases where the defendant targeted "the general public and one of the victims happened to be" particularly vulnerable. *Id.*

The Government directs us to *United States v. Iriri*, a similar case involving an online dating scheme. 825 F.3d 351 (7th Cir. 2016). In *Iriri*, the defendant's victims ranged from 47 to 71 years old. *Id.* at 352. We specified that "the guideline enhancement is limited to the 'unusually' vulnerable victim," and reasoned that, "[a]ge, lack of sophistication, and personal loss … on the part of the victims, coupled with the defendant's skillful employment of electronic media, rendered her targets helpless—proof they were unusually vulnerable." *Id.* Sunmola argues *Iriri* focused solely on the elderly as "vulnerable victims" and, thus makes the case inapplicable. We disagree.

Sunmola and his co-conspirators chose the women they developed relationships with, specifically targeting women they believed would be susceptible to their deceitful tactics. Many of these women had been divorced, abandoned, widowed, or ignored by the men in their lives. One victim was 55 years old and recently divorced from her husband of 20 years. Two victims were recent widows, one with cancer. Another, a 66-year-old living on social security, had been abused by her first husband and abandoned by her second. And another was a divorced, single parent living on disability due to partial blindness from a gunshot wound.

We acknowledge most of the targeted women were middle-aged rather than elderly, however we do not find this conclusive. These women were seeking companionship through online dating, making them particularly susceptible to falling

into the vicious trap of a man who deceitfully made them believe they were in love. Their prior relationships left these women unusually vulnerable to falling for Sunmola and his co-conspirators' deceitful tactics. Therefore, we find that the district court did not err in finding the two-level "vulnerable victim" enhancement applicable here.

Sunmola also argues that the judge improperly imposed U.S.S.G. § 3A1.1(b)(2)'s two-level "vulnerable victim" enhancement due to § 2B1.1(b)(2)(B)'s four-level "substantial financial hardship" imposed. While the Government concedes they originally requested a four-level "vulnerable victim" enhancement under § 3A1.1(b)(2), the record on appeal clearly indicates the Government retracted this request and instead, agreed with the two-level "vulnerable victim" application of § 3A1.1(b)(1). Thus, we affirm the district court's application of the two-level "vulnerable victim" enhancement.

### 3. Acting on Behalf of a Governmental Agency Enhancement Under § 2B1.1(b)(9)(A)

Next, Sunmola argues the district court erroneously applied a two-level enhancement for acting on behalf of a government agency. For fraud crimes, a two-level enhancement applies if the offense involved "a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency." U.S.S.G. § 2B1.1(b)(9)(A). Section 2B1.1's Application Note 8(B) states that this section applies "in any case in which the defendant represented that the defendant was acting to obtain a benefit on behalf of … a government agency … when, in fact, the defendant intended to divert all or part of that benefit."

Sunmola argues that he used his false military status to impress his victims, not for the purpose of obtaining a benefit on behalf of the military or other government organization. We disagree.

The record indicates several instances where Sunmola misrepresented that he was acting on behalf of the military. Sunmola led the victims to believe the money or equipment they sent overseas would be used for work-related purposes, specifically to complete work for, or on behalf of, the U.S. government. In some instances, Sunmola pretended to be an American soldier, stranded in Nigeria on a mission and in need of help. In other instances, Sunmola held himself out as a colonel in the U.S. Army deployed to South Africa, telling his victims he needed them to purchase and ship computer equipment to him to help him finish his assignments. When pressed about his work, he would send the victims articles about "U.S. led efforts" to combat radical Islamic terrorism in South Africa stating, "[t]hat's what I do." Sunmola clearly misrepresented to his victims that he was acting on behalf of, and their contributions were going towards, the U.S. military.

He also argues that the Government's theory of the case is that Sunmola engaged in a romance scheme, not a scheme based on misrepresentation of military involvement. The Government's theory of the case is irrelevant as to whether the enhancement applies under the Guidelines. Thus, the district court did not err in applying this enhancement.

### 4. Organizer or Leader Enhancement Under § 3B1.1(a)

Sunmola also appeals the district court's application of a four-level enhancement for acting as an organizer or leader for the online dating scheme. Under the Sentencing Guidelines, a four-level enhancement is appropriate "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Section 3B1.1's Application Note 4 lists factors courts should consider "[i]n distinguishing a leadership and organizational role from one of mere management or supervision." These factors include: the exercise of decision making authority; the nature of the defendant's participation; the recruitment of accomplices; claimed rights to a larger portion of the fruits of the crime; the degree of participation in planning or organizing; the nature and scope of the crime; and the degree of control or authority exercised over others. U.S.S.G. § 3B1.1 cmt. n.4. "[T]he defendant must have exercised some degree of control over others involved in the commission of the offense *or* he must have been responsible for organizing others for the purpose of carrying out the crime." *United States v. Knox*, 624 F.3d 865, 874 (7th Cir. 2010) (quoting *United States v. Wasz*, 450 F.3d 720, 729 (7th Cir. 2006)).

We find Sunmola's contention that the district court lacked evidence to prove his role as the organizer or leader of the crime unavailing. The record indicates a high level of control and authority by Sunmola. He recruited accomplices, placed the orders for merchandise, found the stores where the merchandise could be picked up, acquired the phony credit card data used to make the purchases, received the stolen

goods and wire transfers, and directed everyone else on what to tell the victims. The Government also presented evidence suggesting that Sunmola commanded a larger share of the profits. In light of these facts, along with the discretion given to a district court's factual findings, we do not find the application of this enhancement clearly erroneous.

## B.  Loss Calculation

Sunmola argues the district court violated his due process rights in its loss calculation by placing the burden of proof on the defendant and relying on incorrect and unreliable information.  "We review legal questions *de novo*, including constitutional challenges to sentences." *United States v. Figueroa-Espana*, 511 F.3d 696, 705 (7th Cir. 2007).

Sunmola first argues the district court violated his due process rights during sentencing when it stated that the burden of proving the loss amount was on the defendant. The government bears the burden of proving the loss amount. *United States v. Vivit*, 214 F.3d 908, 916 (7th Cir. 2000). However, the district court is not bound by the Federal Rules of Evidence during a sentencing hearing and thus, may rely on any information presented at a sentencing hearing, including the PSR, so long as this information "has sufficient indicia of reliability to support its probable accuracy." *Id.* When the district court relies on information contained in the PSR, the defendant bears the burden of showing the information is inaccurate or unreliable. *United States v. Heckel*, 570 F.3d 791, 795 (7th Cir. 2009). The defendant cannot merely attack the information contained "in the PSR by making a 'bare denial' of its accuracy." *Id.* (quoting *United States v. Mustread*, 42 F.3d

1097, 1101–02 (7th Cir. 1994)). Thus, "the defendant must provide 'substantiated evidence … to counter the government's explicit proof of loss.'" *United States v. Durham*, 766 F.3d 672, 686 (7th Cir. 2014) (quoting *United States v. Gordon*, 495 F.3d 427, 432 (7th Cir. 2007)). "Only when the defendant's objection creates real doubt as to the reliability of the information in the PSR does the government have the burden of independently demonstrating the accuracy of the information." *Heckel*, 570 F.3d at 795–96.

The district court relied on the PSR in determining the amount of loss calculation and appropriately placed the burden of proof on Sunmola to rebut the accuracy and reliability of the PSR. However, Sunmola "presented no documentary evidence to challenge the information in the PSR," and instead set forth bare denials. *Heckel*, 570 F.3d at 796. Thus, the district court did not err in placing the burden on Sunmola.

Sunmola also argues the district court violated his due process rights in relying on incorrect and unreliable information about the amount of loss and number of victims in the PSR. We review a district court's loss calculation for clear error, reversing only "if we are left with the definite and firm conviction that a mistake has been made." *United States v. Love*, 680 F.3d 994, 999 (7th Cir. 2012). "[T]he district court need only make a reasonable estimate of the loss in applying the enhancement." *United States v. White*, 737 F.3d 1121, 1142 (7th Cir. 2013) (internal citation and quotation marks omitted). Thus, the defendant must demonstrate that the sentencing court's loss calculation was "not only inaccurate but outside the realm of permissible computations." *Id.* (quoting *Love*, 680 F.3d at 999).

At the sentencing hearing, the Government called Latham, the lead investigator from the United States Postal Inspection Services, to testify under oath. Latham verified the truth and accuracy of the documents provided at the sentencing hearing that he and his office prepared. These documents contained a breakdown of each individual victims' loss from Sunmola's scheme. Latham specifically verified a spreadsheet, attached as an addendum, listing 39 additional victims beyond the 13 listed in the PSR and the loss amount next to each set of initials. He testified that the information was collected through direct interviews, phone interviews, mailed-in statements, or mailed-in supporting documentation with the victims describing what happened and the amount of money they lost. In some instances, this information was corroborated with MoneyGram and Western Union documents. He testified that while some of these losses were based on victim impact statements he was unable to verify, others had been independently verified. He further testified that it was his opinion that the list was inconclusive. Through investigating Sunmola's Match.com profile, he saw that Sunmola had attempted to contact many other individuals, but he was unable to reach all of these individuals. Thus, he concluded the total calculated loss of around $1.7 million was an underestimate of the total actual loss amount.

The district court considered all of the testimony and documents submitted at the sentencing hearing and determined an actual loss calculation of $1,669,050.98. The Guidelines provide for a 16-level enhancement if the loss exceeds $1.5 million and is less than $3.5 million. U.S.S.G. § 2B1.1(b)(1)(I).

Thus, the court imposed a 16-level enhancement for the actual loss calculation.

Sunmola, amongst numerous arguments, nit-picks at almost every dollar the district court accepted as accurate and true to calculate the final loss calculation. Many of these discrepancies, taken individually, have no effect on the 16-level enhancement. Additionally, many of Sunmola's arguments assert that "the government failed to prove" loss amounts of individual victims. However, as we previously stated, the burden of proof was on Sunmola to provide evidence showing that the PSR was inaccurate or unreliable, which he failed to do. Thus, the district court did not err in imposing a loss calculation of $1,669,050.98.

### C. Restitution

Sunmola next argues the district court erred in calculating the amount of restitution owed. We review a district court's restitution calculation for abuse of discretion. *United States v. Danford*, 435 F.3d 682, 689 (7th Cir. 2006). "Restitution is determined by the judge using the lower preponderance of the evidence standard." *Id.* "There is no *per se* rule that a restitution award need be supported by any particular form of evidence." *United States v. DiCosola*, 867 F.3d 793, 798 (7th Cir. 2017). We will uphold an order of restitution unless we find that "the district court used inappropriate factors or did not exercise discretion at all." *United States v. Frith*, 461 F.3d 914, 919 (7th Cir. 2006).

The district court adopted the proposed restitution amount from the PSR. This amount was derived from the loss calculation we previously affirmed. Sunmola contends that the record

unambiguously credited the deposited amount from his liquidated assets against the PSR's restitution and, because the district court later amended the restitution amount in the judgment, the deposited amount should be subtracted from the amended judgment amount as well.

We fail to find any discussion in the record about whether the credited amount had or had not been subtracted from the proposed restitution amount found in the PSR. However, making this determination is unnecessary for us to affirm the district court's restitution calculation.

As previously stated, sentencing hearings have a lower evidentiary standard. *Love*, 680 F.3d at 999. The judge has complete discretion to adopt the PSR or any other evidence presented at a sentencing hearing to determine the final sentence. *Vivit*, 214 F.3d at 916. With a restitution amount in line with the total loss calculation, Sunmola presents nothing to suggest the district court abused its discretion in ordering this similar amount for restitution. Furthermore, "[j]udges do not always speak as clearly as they would write, and it would be wrong to interpret imperfection in oral expression to mean more than the context suggests it means." *United States v. Malone*, 747 F.3d 481, 487 (7th Cir. 2014). Thus, we affirm the restitution amount ordered by the district court.

### D. General Deterrence

Finally, Sunmola contends that his sentence is substantively unreasonable in light of the district court's overemphasis on general deterrence. We review the substantive reasonableness of a defendant's sentence for an abuse of discretion. *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012). "We

will uphold [a] sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *United States v. Melendez*, 819 F.3d 1006, 1013 (7th Cir. 2016) (quoting *United States v. Annoreno*, 713 F.3d 352, 359 (7th Cir. 2013)). We apply a presumption of reasonableness to sentences that are within the Guidelines range, and the defendant bears the burden to overcome that presumption. *Marin-Castano*, 688 F.3d at 902.

Sunmola argues the judge overstated general deterrence as a primary reason for imposing a 324-month sentence. We disagree. In reviewing the record, the district court clearly did not rely primarily on general deterrence in Sunmola's final sentencing. The judge mentioned general deterrence in a mere four sentences out of the eight-page transcript from his oral statement. The judge repeatedly emphasized the seriousness of the offense, describing it as "the most devastating crime one could ever imagine without someone laying hands or even eyes on another human being." The judge also pointed to other contributing factors, including the need to promote respect for the law, to provide just punishment, to protect the public from him, as well as the impact Sunmola had on the victims, and his history and characteristics. General deterrence is a factor under § 3553(a) the district court is allowed to weigh in determining a final sentence. While "the weighting of the § 3553(a) factors must fall within the bounds of reason," nothing in the district court's decision gives us reason to believe the bounds of reason were abused. *United States v. Smith*, 721 F.3d 904, 908 (7th Cir. 2013) (internal citation and quotation marks omitted). Thus, we affirm the district court's inclusion of general deterrence.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM.