In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1990

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LATRELL S. COE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:19-CR-40083-SMY-1 — **Staci M. Yandle**, *Judge.*

ARGUED JANUARY 26, 2021 — DECIDED MARCH 24, 2021

Before SYKES, *Chief Judge*, and EASTERBROOK and KIRSCH, *Circuit Judges.*

SYKES, *Chief Judge*. Latrell Coe and two accomplices traveled from Indiana to a small town in southern Illinois where they robbed a Verizon store at gunpoint, fleeing with more than $25,000 in merchandise and cash. Police tracked them down, and a grand jury returned an indictment charging them with Hobbs Act robbery and brandishing a firearm in connection with a crime of violence. Coe pleaded guilty to

both crimes, and the district court imposed a total sentence of 117 months in prison, the bottom of the advisory range under the Sentencing Guidelines.

Coe challenges his sentence on two grounds. First, he argues that the judge improperly considered his race by relying on a false stereotype about black families. (Coe is black.) Second, he argues that the judge committed procedural error by failing to adequately consider his argument about "brain science" and the psychological immaturity of young men in their late teens. (Coe was 18 when he committed these crimes.) We reject both arguments and affirm.

## I. Background

In July 2019 Coe and two other men drove from Indianapolis to tiny Mt. Carmel, Illinois, where they robbed a Verizon store by holding employees and customers at gunpoint. The robbers parked in the alley behind the store, and one of them stayed in the car while Coe and the other went in. The two men first asked to buy a phone; then each displayed a handgun, racked the chamber, and announced, "[t]his is a robbery." While continuously brandishing their guns, Coe and his accomplice ordered two customers and an employee to stay in place and forced another employee to open the safe and load merchandise and cash into trash bags. They then fled the store with cash and goods worth over $25,000, jumped into the getaway car, and sped off.

An alert witness took photos of the robbers' car as it left the scene. The police located the car and eventually closed in on the robbers, and Coe and his accomplices were arrested. Officers recovered some of the stolen goods, together with cash, firearms, and a tactical vest with magazine pouches,

either from inside the getaway car or in the robbers' possession.

A grand jury returned a two-count indictment charging Coe and his accomplices with interfering with commerce by robbery, 18 U.S.C. § 1951, and brandishing a firearm during a crime of violence, *id.* § 924(c)(1)(A)(ii). Coe pleaded guilty to both counts. The probation office calculated a Guidelines sentencing range of 33 to 41 months on the robbery count. The firearm count requires a minimum consecutive sentence of 84 months, so the presentence report ("PSR") recommended a total sentencing range of 117 to 125 months.

Coe did not object to the Guidelines calculation or anything else in the PSR, which included a list of his juvenile adjudications (for firearm possession and escape); a few arrests that did not result in charges (notably, for battery and firearm possession); and several pending charges for state crimes committed on the same day or shortly after the robbery of the Verizon store.

The government recommended a sentence of 125 months, the top of the Guidelines range. The prosecutor concentrated her sentencing argument on the violent nature of the robbery and its effect on the victims. Coe's attorney, for her part, urged the court to consider a substantial downward variance from the Guidelines range; she argued for a sentence of 84 months and one day. In other words, the defense sought the minimum possible prison term for this combination of crimes: one day for the robbery plus the 84-month mandatory consecutive term on the firearm count.

At the sentencing hearing, Coe's attorney made two basic points in mitigation. First, she briefly mentioned an argu-

ment she had raised in her written sentencing memorandum about the relationship between youth and brain development. In that submission, counsel argued that Coe's age—he was 18 at the time of the crimes—deserved weight as a mitigating factor because "brain development continues into young adulthood" and some young adults in their late teens and early twenties are not yet fully psychologically mature. For support she cited two law-review articles, and she also submitted a letter from one of Coe's GED instructors who asserted without explanation that "[i]t is a scientific fact that the human brain is not even fully developed until the age of 26" and that Coe deserved leniency because he was young and "made some really poor choices."

Second, counsel noted that when Coe was 13 years old, his father was convicted of a serious drug crime and sentenced to a lengthy prison term. Although Coe's parents divorced when he was five and he was raised by his mother, counsel argued that as a result of his father's incarceration, Coe "lost his way" and "made really poor choices." In her sentencing memorandum, counsel cited several articles discussing the problems encountered by children of incarcerated parents and, more generally, children who grow up in father-absent families. Counsel did not, however, link the information in the articles to her client's particular circumstances or characteristics. Nor did she add anything to this argument at sentencing; she mentioned the articles only in passing.

The remainder of counsel's sentencing remarks simply responded to the prosecutor's argument about the violent nature of the crime and explained why an 84-month sentence would be sufficient to address Coe's rehabilitation.

The judge imposed a sentence of 117 months, the bottom of the range recommended by the Guidelines. At the beginning of the hearing, she listed the statutory sentencing factors, 18 U.S.C. § 3553(a), and when the time came to announce the sentence, she explained that the aggravating and mitigating factors called for a sentence at the low end of the Guidelines range. The judge specifically identified what she considered to be the most important aggravating factors: the severity of the crimes (with particular emphasis on the brandished firearms and the threats and intimidation); the emotional impact on the victims; Coe's possession of a tactical vest (demonstrating that his actions were not impulsive); and the need to deter others from similar crimes.

The judge also specifically considered the arguments Coe raised in mitigation. Responding to the point about teenage brain development, the judge explained why Coe's age was not a weighty mitigating factor, directing her remarks specifically to him:

> At the same time, there are mitigating factors. You were very young at the time; I think even now you are just 19. And as your lawyer points out, there [are] statistics that say because of brain development, 18-year-old or younger, teenage men are—their brains aren't developed.

> Well, here's the deal, and to be totally honest with you: There are hundreds of millions of 18-year-old, and younger, teenage men who, even though their brains may not be totally developed, do not engage in the type of criminal conduct that you did. And so, yes, that may

> be true. But that does not explain away your crime or your conduct.

The judge also considered the argument about Coe's father's incarceration, explaining that because Coe had other significant sources of family support—namely, his mother—this factor deserved little weight.

> Obviously, [your father's incarceration] had some impact. But you had a very supporting mother and family. And even in the PSR, you admit yourself, your mother did a good job raising you.

> And so, I'm sure that you felt some loss surrounding your father's incarceration, but you had other resources available to you. And, … unlike some people who have no one, that's … not your story. And frankly, Mr. Coe? The absence of a father in a home, I don't have to tell you, is a common thing in our particular community. And we cannot excuse criminal behavior and other bad behavior based on that, particularly when you've got someone loving like a mother in your corner and have other opportunities. So, you don't get a pass for that.

The judge concluded her analysis by rejecting Coe's proposed variance from the Guidelines range. She explained that a downward variance was not warranted because Coe's crimes were violent and his juvenile criminal history was serious, especially the arrests and adjudications for crimes involving violence and firearms. She also mentioned the need for both general and specific deterrence. After an-

nouncing the 117-month sentence, the judge asked the attorneys if they wanted any further elaboration of her decision. Both said no.

## II. Discussion

Coe raises claims of constitutional and procedural sentencing error, so our review is de novo. *United States v. Bustos*, 912 F.3d 1059, 1062 (7th Cir. 2019) (regarding procedural challenges); *United States v. Sunmola*, 887 F.3d 830, 839 (7th Cir. 2018) (regarding constitutional challenges).

### A. Impermissible Consideration of Race

Coe first argues that the judge impermissibly rejected his absent-father argument based on his race by engaging in racial stereotyping premised on unsupported assumptions about absent fathers in the black community. He frames this claimed error as a violation of his right to equal protection, *see United States v. Grisanti*, 943 F.3d 1044, 1053 (7th Cir. 2019), or alternatively his due-process right to be sentenced based on accurate information, *see United States v. Walton*, 907 F.3d 548, 552 (7th Cir. 2018).

We note for starters that the Guidelines expressly forbid the consideration of race in sentencing, U.S.S.G. § 5H1.10, and we normally consider nonconstitutional arguments before constitutional ones, *see United States v. Vargas*, 915 F.3d 417, 420 (7th Cir. 2019). Whether grounded in the Guidelines or the Constitution, Coe's claim rests on the judge's commentary about his absent-father argument— more specifically, the judge's statement that "[t]he absence of a father in a home … is a common thing in our particular community. And we cannot excuse criminal behavior and other bad behavior based on that … ." The judge did not

specify what she meant by "our particular community," but both Coe and the judge are black, so we can safely assume that she was referring to the black community.

As Coe sees it, this comment shows that the judge rejected his mitigation argument about absent fathers because of his race. Divorced from context, perhaps the statement could be understood in that way. But the statement cannot be considered in isolation. Reading the record as a whole, the judge identified several reasons for her conclusion that the absent-father argument deserved little weight as a mitigating factor. Focusing on Coe's individual circumstances, she acknowledged that his father's imprisonment likely had some effect on him but explained that he had other sources of support, unlike some children of incarcerated fathers who "have no one." Elaborating on this point, the judge observed that the absent-father argument might deserve more weight if Coe did not have the support of a loving mother or lacked "other opportunities." Importantly, the judge did not summarily reject Coe's argument about his absent father, nor did she refuse to weigh it in the balance. Rather, she considered it in context and connected it to Coe's particular circumstances: "Obviously, it had some impact. But you had a very supporting mother and family. … And we cannot excuse criminal behavior … based on [an absent father] … when you've got someone loving like a mother in your corner … ." This race-neutral reasoning undermines Coe's contention that the judge rejected his absent-father argument because of his race.

We note as well that it's not enough for Coe to point to an impermissible statement in the judge's sentencing remarks. Rather, he must also show that the judge *relied on* an

impermissible factor to arrive at the sentence imposed. *See United States v. Patel*, 921 F.3d 663, 671 (7th Cir. 2019) (concluding that the judge's brief, off-topic comment did not require reversal because it had no bearing on the sentence); *Walton*, 907 F.3d at 552 (explaining that due process is implicated only if the judge actually relied on false information); *United States v. Smith*, 562 F.3d 866, 872–74 (7th Cir. 2009) (upholding the sentence when the record as a whole showed that a questionable statement by the judge did not affect the court's reasoning).

Coe has not carried this burden. As we've just explained, the judge gave several reasons for her decision to give little weight to the absent-father argument—most notably, Coe's strong support from his mother and other family members. Moreover, most of her sentencing analysis focused on the violent nature of Coe's crimes and her concerns about his criminal history. Read fairly and as a whole, the judge's remarks make it clear that the sentencing decision was overwhelmingly driven by these factors and was uninfluenced by her perceptions about absent fathers in the black community. Finally, the 117-month sentence represents the bottom of the Guidelines range, which Coe concedes was properly calculated, and the judge adequately explained why a downward variance was unwarranted. On this record we're satisfied that Coe's race had no bearing on the sentence imposed.

### B. "Brain Science" Argument

Coe also argues that the judge committed procedural error by failing to provide a reasoned basis for rejecting his argument about "brain science" and the underdeveloped

brains of 18-year-olds. Once again, this argument miscon-strues the record.

First, the judge did not ignore this argument. Rather, she acknowledged Coe's youth and the status of brain develop-ment in an 18-year-old. Second, Coe's argument was wholly generic and thus could apply to a wide swath of defendants regardless of their particular circumstances. Accordingly, we can comfortably classify it as a "stock argument" that re-quired little, if any, discussion. *United States v. Graham*, 915 F.3d 456, 459 (7th Cir. 2019) (explaining that "the obliga-tion to address mitigating arguments decreases when a defendant presents 'stock arguments'" (quoting *United States v. Martinez*, 520 F.3d 749, 753 (7th Cir. 2008))). Finally, the judge reasonably concluded that Coe's crimes could not be explained away by his youth—at least not to the extent Coe suggested—because millions of young adults in their late teens and early twenties obey the law. No further explana-tion was required.

AFFIRMED