In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3514

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFREY HECKEL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07 CR 41—**John C. Shabaz**, *Judge.*

ARGUED JUNE 5, 2008—DECIDED JUNE 22, 2009

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* After auctioning items on the Internet that he had no intention of delivering, Jeffrey Heckel was indicted on five counts of wire fraud. He pleaded guilty to one of those counts and was sentenced to 30 months in prison. Heckel appeals his sentence; he contends that the district court erred in calculating both his offense level and criminal-history score when it applied a two-level enhancement for mass-marketing and added three criminal-history points for a state-court theft conviction.

We affirm. Application of the mass-marketing enhancement was appropriate because Heckel used the Internet to conduct large-scale advertising to attract bidders to his fraudulent online auctions. Moreover, the district court did not clearly err when it determined that Heckel's previous state conviction had resulted in a 19-month term in prison, which added three criminal-history points to his total. Heckel's recollection that his sentence was shorter was insufficient to cast doubt on the reliability and accuracy of the information in the presentence investigation report ("PSR"), on which the district court relied. Because the district court correctly calculated Heckel's offense level and criminal-history score and imposed a sentence within the applicable guidelines range, we presume that the sentence was reasonable—a presumption Heckel has failed to rebut.

## I. Background

Beginning in March 2002, Jeffrey Heckel used two Internet auction websites to defraud successful bidders on items he had listed for sale. The scheme was simple: He would list an item for auction, accept the highest bid, cash the check sent to him by the winning bidder, and ship a product far inferior to the one advertised on the website. Heckel's fraud netted him in excess of $15,000.

Most of the winning bidders cheated by Heckel's fraud contacted law-enforcement authorities, and his operation was shut down just over a year after it had begun. Heckel was indicted on five counts of mail fraud in violation of

18 U.S.C. § 1341. He agreed to plead guilty to one count and pay restitution to all five victims. In exchange the government dismissed the remaining counts and recommended that he receive a reduction in his offense level for acceptance of responsibility. The district court accepted Heckel's plea.

The probation office calculated a total offense level of 11 under the sentencing guidelines, which included a base offense level of 7 plus a 4-level increase because the amount of loss was more than $10,000 but less than $30,000. U.S.S.G. § 2B1.1(a)(1) & (b)(1)(C) (2006). The PSR also applied the two-level reduction for acceptance of responsibility, *id.* § 3E1.1(a), but then added two levels because the offense was committed through "mass-marketing," *id.* § 2B1.1(b)(2)(A)(ii). Heckel objected to the application of the mass-marketing enhancement.

For Heckel's criminal-history score, the PSR initially assessed 12 points, placing him in criminal-history Category V. Heckel made two objections to this total. The probation office then agreed with one of these objections and issued an addendum reducing Heckel's score to 10, the minimum for Category V. The probation office disagreed with Heckel's second objection—relating to his state conviction for theft—and refused to reduce Heckel's total any further.

The district court accepted the reduction from 12 to 10 points, but did not specifically address Heckel's objection regarding the treatment of his theft conviction. As a result, Heckel remained in criminal-history Category V. The court also rejected Heckel's challenge to the ap-

plication of the mass-marketing enhancement, so the guidelines recommended a range of 24-30 months. Commenting on Heckel's extensive criminal past and the need to deter any future criminal behavior, the court sentenced Heckel to 30 months in prison and 3 years of supervised release. Heckel appealed.

## II. Analysis

Our review of a district court's application of the guidelines is de novo, but we review findings of fact for clear error. *United States v. Samuels*, 521 F.3d 804, 815 (7th Cir. 2008). Sentencing factfinding is entitled to deference "'unless we have a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *United States v. Wilson*, 502 F.3d 718, 721 (7th Cir. 2001)).

### A. Mass-marketing

Heckel first argues that the district court incorrectly calculated his offense level because the court added two levels for use of "mass-marketing." U.S.S.G. § 2B1.1(b)(2)(A)(ii). The commentary to this guideline explains that "mass-marketing" includes "a plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to . . . purchase goods or services." *Id.* § 2B1.1 cmt. n.4(A). Because the auction websites Heckel used were accessible to the general public and Heckel attempted to

increase the price of the items posted by soliciting a large number of bids over the Internet, the district court applied the enhancement.

According to Heckel, the district court erred because Internet auctions are different in kind from mass-marketing frauds that use telemarketing or other forms of large-scale solicitation. An auction, Heckel argues, can only have one victim: the winning bidder. The guideline requires that the scheme "induce a large number of persons to . . . purchase goods or services." Heckel maintains that the limited pool of actual victims defeats the application of the enhancement.

Caselaw is sparse on this line of argument, but the few cases that have taken up the issue have been decided in favor of applying the enhancement. In *United States v. Pirello*, the defendant used Internet classifieds to advertise computers for sale. 255 F.3d 728, 730 (9th Cir. 2001). Three unsuspecting consumers sent Pirello more than $4,000 for computers that he did not have and could not provide. Pirello argued that the mass-marketing enhancement should not apply because only three people responded to his fraudulent Internet solicitation. The Ninth Circuit rejected this argument, holding instead that the limited number of victims "was the product of chance" that was "in no way indicative of the breadth of Pirello's solicitation." *Id.* at 732. The court reasoned that any other consumers who responded also "would have fallen victim to his plan." *Id.*; *see also United States v. Magnuson*, 307 F.3d 333, 335 (5th Cir. 2002) (agreeing with *Pirello* that the mass-marketing

enhancement "merely requires advertising that reaches a large number of persons") (internal quotation marks omitted).

The guideline itself suggests that the mass-marketing enhancement applies to solicitation schemes reaching a large number of potential victims regardless of the number of actual victims. Contained within § 2B1.1(b)(2) are three other enhancements for frauds involving more than 10, 50, or 250 victims respectively. U.S.S.G. § 2B1.1(b)(2)(A)-(C). Increasing a sentence under the mass-marketing enhancement only when the victim count is large would render these other provisions superfluous. Instead of focusing on the actual number of victims, the mass-marketing enhancement focuses on defendants who have used a particular solicitation method to increase the number of potential victims. Indeed, the Application Notes explain that the enhancement applies to "cases in which mass-marketing has been used to target a large number of persons, regardless of the number of persons who have sustained an actual loss or injury." U.S.S.G. app. C, vol. II, amend. 617 (2003); *see also United States v. Olshan*, 371 F.3d 1296, 1301 (11th Cir. 2004) (finding that the mass-marketing "enhancement focuses on the method of inflicting the harm"); *United States v. Fredette*, 315 F.3d 1235, 1244 n.4 (10th Cir. 2003) ("[T]he enhancement for multiple victims goes to the ultimate harm caused by the defendant's conduct, while the enhancement for mass-marketing concerns the scope and sophistication of the defendant's fraud.").

Here, Heckel's scheme netted only a small number of victims, but the loss that those few suffered was exacerbated by Heckel's chosen method of solicitation. The competitive bidding process of an Internet auction often increases the price that a bidder might otherwise have to pay. Use of the Internet to advertise and conduct an auction—like use of telephones in a "telemarketing campaign that solicits a large number of individuals to purchase" goods or services—exposes more consumers to the fraud than otherwise would have been possible, and potentially increases the price (and therefore the loss) by expanding the number of bidders. U.S.S.G. § 2B1.1 cmt. n.4(A).

Even though an Internet auction results in just one winning bidder and thus only one victim, the sheer scope of the possible bidding drives the price of the item on the virtual auction block. Posting a rare coin for sale on the Internet, as Heckel did in the count to which he pled guilty, invited the vast online public to bid, and those who did so were trying to purchase the item by suggesting a price that they believed no competing online bidder would exceed. That only one such bidder eventually won the online auction does not negate the harm of this method of fraudulent solicitation. *Cf. United States v. Blanchett*, 41 F. App'x 181, 183 (10th Cir. 2002) ("[The defendant] never intended to provide computers to prospective buyers, and thus did not feel bound to accept only the highest offer, leaving every Internet user who bid on the computers potentially vulnerable."). Heckel's was exactly the type of "plan, program, promotion, or campaign" that the mass-

marketing enhancement is designed to address. U.S.S.G. § 2B1.1 cmt. n.4(A).[1]

### B. Criminal-history Score

Heckel also contends that the district court erred by assessing three criminal-history points for his 1992 state conviction for theft. Under U.S.S.G. § 4A1.1(a), a criminal defendant is assigned three points for each "prior sentence of imprisonment exceeding one year and one month." Two points are added if the sentence was between 60 days and 13 months. *Id.* § 4A1.1(b). The PSR reported that Heckel was sentenced to 19 months for this offense; Heckel only recalled spending 6 months in a community-based behavioral modification program with short stints in prison for probation violations. Heckel claims that the government had the burden of proving that the information in the PSR was reliable and that it failed to do so. He argues that he should have received only the two-point increase instead of three, placing him in criminal-history Category IV; the applicable guidelines range would then have dropped from 24-30 months to 18-24 months. *Id.* Ch. 5, Pt. A. Heckel preserved his objection at sentencing, so we review the

---

[1] Because we conclude that use of an Internet auction is a means of "solicitation . . . to induce a large number of persons to . . . purchase goods or services," we need not address the government's alternative argument that such an auction also qualifies as a "contest or sweepstakes." U.S.S.G. § 2B1.1 cmt. n.4(A)(i)-(ii).

court's decision for clear error. *United States v. Newman*, 148 F.3d 871, 877 (7th Cir. 1998).

The district court may rely on the information contained in the PSR so long as it is well supported and appears reliable. *United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004). "When the court relies on such information in sentencing a defendant, the defendant bears the burden of showing that the presentence report is inaccurate or unreliable." *Id.* The defendant cannot attack the information in the PSR by making a "bare denial" of its accuracy. *United States v. Mustread*, 42 F.3d 1097, 1101-02 (7th Cir. 1994). Only when the defendent's objection creates real doubt as to the reliability of the information in the PSR does the government have the burden of independently demonstrating the accuracy of the information. *Id.* at 1102.

Heckel presented no documentary evidence to challenge the information in the PSR about his 19-month theft sentence, and his recollection was far from unambiguous. His initial claim, made in his objections to the PSR, was that he served six months' incarceration and attended a treatment program for an additional six months after he violated probation. At sentencing, however, his counsel simply argued that Heckel "does not recall ever being told by a judge that he was being sentenced to a prison sentence." Heckel's counsel also said he had checked the records on which the probation officer had relied, but the objection remained highly ambiguous: "I went over there and looked, and I just don't feel that the record is clear enough to give him three criminal history points on this particular conviction."

Heckel's tentative and conflicting recollection of his theft sentence of 15 years earlier was not enough to cast doubt on the accuracy or reliability of the PSR. At sentencing Heckel's counsel suggested only that the documents used by the probation office to support the information in the PSR were not completely clear. This amounts to a "bare denial" of the information in the PSR—not enough to call the accuracy of the PSR into question. The PSR reported that Heckel was sentenced to 19 months in the custody of the Minnesota Department of Corrections, but that this sentence was stayed and he was placed on probation for 5 years. The stay was lifted, however, and the 19-month sentence was reinstated after Heckel committed a third violation of his probation. Absent any hard evidence demonstrating that this information was inaccurate, we cannot say that the district court clearly erred by relying on the PSR to calculate Heckel's criminal-history category.[2]

Heckel also asserts that the district court failed to make a specific ruling on his objection to the three-point assess-

---

[2] In his reply brief, Heckel argues that the district court improperly allowed the government to supplement the record after he had filed his brief with this court. The supplementary document had been relied upon by the probation office when making its recommendation but was not submitted to the district court for consideration at sentencing. There is no need to address Heckel's objection to the supplementation, however; we conclude that the district court did not clearly err in adopting the PSR's recommendation even though it never considered the supporting evidence later submitted by the probation office.

ment for his theft conviction in violation of the *Federal Rules of Criminal Procedure*. The rules require the sentencing court to rule on "any disputed portion of the presentence report or other controverted matter . . . or determine that a ruling is unnecessary." FED. R. CRIM. P. 32(i)(3)(B). In announcing its sentence, the district court referred to the PSR's criminal-history calculation and noted that the point total was 10 rather than 12 as stated in the original report. But the court did not directly address Heckel's objection to the 19-month theft sentence and instead placed him in Category V without further elucidation.

We have characterized Rule 32's requirement as a "minimal burden." *United States v. Sykes*, 357 F.3d 672, 674 (7th Cir. 2004). The sentencing court must make findings to resolve a dispute between the defendant and the government, but a general reference by the court to the PSR "constitutes sufficient findings even as to controverted facts when we are assured that the district court made a decision of design, rather than of convenience, to adopt the PSR." *United States v. Burke*, 148 F.3d 832, 836 (7th Cir. 1998); *see also United States v. Cureton*, 89 F.3d 469, 473 (7th Cir. 1996) ("[S]o long as it actually resolves the disputed issue on the record, a sentencing court fulfills the purposes of Rule 32.").

Although the district court did not explicitly address Heckel's objection to the PSR's treatment of his theft conviction, the court referenced the information in the PSR and specifically adopted the PSR's findings. After Heckel objected to the additional criminal-history point

for the theft conviction, the probation office filed an addendum to the PSR along with its sentencing recommendation. The addendum detailed the sequence of events leading to Heckel's term of imprisonment, including the three dates upon which his probation was revoked and the date that the previously stayed 19-month sentence was reinstated. The court acknowledged and accepted the addendum when it noted that Heckel's correct criminal-history score was 10, instead of 12 as initially stated in the PSR, and that he remained in Category V. Rule 32 requires nothing more. *See United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) ("We hesitate to read [Rule 32] so broadly that the judge is obliged to address every argument that a defendant makes at the sentencing hearing.").

## C. Reasonableness of the Sentence

Heckel's challenge to the reasonableness of his sentence requires only brief attention. Heckel first contends that the sentence is unreasonable because it is based on a procedural error—that is, an incorrect guidelines range. Our review is for abuse of discretion, *Gall v. United States*, 128 S. Ct. 586, 597 (2007), and there was no abuse of discretion here. Heckel's argument is merely a reiteration of his two challenges to the guidelines calculation, which we have rejected above.

Because Heckel's guidelines range was correctly calculated and the district court sentenced him within that range, the sentence is presumed reasonable on appeal. *Rita v. United States*, 127 S. Ct. 2456, 2462-63 (2007).

Heckel nonetheless maintains that his sentence is unreasonable because the district court referenced a May 2007 probation violation for purchasing and selling firearms, despite being on notice that these charges had been dropped. But a wide range of conduct is relevant at sentencing—including uncharged conduct and charges of which the defendant was acquitted—so long as that conduct is established by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148 (1997);[3] *see also* 18 U.S.C. § 3661; U.S.S.G. § 1B1.4. Heckel doesn't argue that the conduct underlying the probation violation did not occur—only that the formal charges were dismissed. Absent evidence to the contrary, the district court was entitled to rely on this information in the PSR even though the charges were dropped. Heckel makes no other challenge to the reasonableness of his sentence, and as such, has failed to rebut the presumption of reasonableness.

AFFIRMED

---

[3] We have held that *Watts* survived *United States v. Booker*, 543 U.S. 220 (2005), and remains good law. *E.g., United States v. Hurn*, 496 F.3d 784, 788 (7th Cir. 2007).