In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2765

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEXTER FISHER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cr-00157-1 — **Jane Magnus-Stinson**, *Chief Judge.*

ARGUED SEPTEMBER 10, 2019 — DECIDED NOVEMBER 25, 2019

Before WOOD, *Chief Judge*, and KANNE and BRENNAN, *Circuit Judges*.

KANNE, *Circuit Judge*. In the late summer and fall of 2014, multiple pharmacies in Indianapolis were robbed at gun point. Police eventually arrested Dexter Fisher, who was later charged with nine offenses for his involvement in three of the robberies. A jury found Fisher guilty of Hobbs Act robbery, brandishing a firearm during a crime of violence, and being a felon in possession of a firearm. The district court then

imposed a sentence, which included conditions of supervised release and an order that Fisher forfeit the firearm used in his offenses.

Fisher appealed his convictions for brandishing a firearm, the forfeiture of his firearm, and parts of his sentence relating to supervised release.

Only one alleged error needs correction: an inconsistency between the oral sentence and the written judgment, regarding whether terms of supervised release attach to certain counts. We remand with specific instructions to correct that portion of the written judgment.

## I. BACKGROUND

*A. Fisher's Conduct and Police Investigation*

Indianapolis experienced an increase in pharmacy robberies during the late summer and fall of 2014. Three pharmacy robberies in August and September shared a common pattern: the robber would jump over the pharmacy counter, brandish a firearm, demand opioid pills, and leave the store immediately after obtaining the pills.

In October, police responded to a call from a CVS Pharmacy employee concerned that a man in the store, Fisher, had been involved in a previous robbery. The officer approached Fisher and asked for his identification. Fisher panicked, pushed a shopping cart into the officer, and pulled a semi-automatic pistol from his pants as he ran through the pharmacy's back exit. Another officer apprehended Fisher a few blocks away. Officers found a Smith & Wesson semi-automatic pistol along Fisher's escape route. This pistol was the only firearm submitted into evidence at the trial that followed.

Employees of three pharmacies that had been robbed before the October incident identified Fisher as the person responsible for those robberies. Officers also found on Fisher's phone pictures of him in clothes identical to those worn during the robberies.

*B. Charges and Trial*

In a nine-count indictment, the government alleged Fisher had committed three robberies and related firearm offenses. The indictment also sought the forfeiture of any firearm or ammunition used in the charged offenses.

After a two-day trial in March 2018, a jury found Fisher guilty of seven charged offenses: three counts of Hobbs Act robbery (Counts 1, 3, and 5), 18 U.S.C. § 1951(a); three counts of brandishing a firearm during a crime of violence (Counts 2, 4, and 6), *id.* § 924(c)(1)(A)(ii); and one count of being a felon in possession of a firearm (Count 9), *id.* § 922(g)(1). The jury verdict did not address forfeiture.

*C. Sentencing*

The probation office then prepared Fisher's Presentence Investigation Report ("PSR"). Based on Fisher's three convictions for brandishing a firearm, he faced a mandatory minimum sentence of fifty-seven years. *See* 18 U.S.C. § 924(c)(1)(C) (2015), *amended by* First Step Act of 2018, Pub. L. No. 115-391, § 403(a).

The PSR also proposed conditions of supervised release, including one regarding psychoactive substances: "You shall not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances *(e.g., synthetic marijuana, bath salts, Spice, glue, etc.)* that impair a person's

physical or mental functioning, whether or not intended for human consumption." (Emphasis added).

At the sentencing hearing, Fisher's counsel acknowledged that he had reviewed the PSR with Fisher. The judge noted that Fisher objected to the PSR's offense-conduct descriptions, but overruled the objection. Fisher did not object to any proposed supervised-release conditions.

The judge orally sentenced Fisher to fifty-seven years plus one day in prison—one day more than the mandatory minimum sentence. The judge also ordered "the forfeiture of any firearm or ammunition involved in or used in the instant offense." Neither party objected to the forfeiture.

Turning to Fisher's terms of supervised release, the judge sentenced Fisher to "concurrent [supervised release] terms of *one year for each of Counts 1, 3, 6 and 9*." (Emphasis added). The judge continued by informing Fisher of his conditions of supervised release. The district court instructed that Fisher could not "knowingly purchase, possess, distribute, administer or otherwise use any psychoactive substances that impair a person's physical or mental functioning whether or not intended for human consumption."

The sentencing hearing concluded with the judge asking if either party had any objections to the proposed sentence, or if they needed her to further explain the reasoning behind the sentence. Neither party objected or requested further explanation.

The next day, the district court issued a written judgment. The text of the written judgment, however, differed from the sentence announced the day before. The court's written judgment stated that "[u]pon release from imprisonment, [Fisher]

shall be on supervised release for a term of *1 year per count, concurrent*." (Emphasis added). It also included the following supervised release condition: "[Fisher] shall not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances *(e.g., synthetic marijuana, bath salts, Spice, glue, etc.)* that impair a person's physical or mental functioning, whether or not intended for human consumption." (Emphasis added).

Four months later, Congress enacted the First Step Act, which amended the way defendants, like Fisher, are sentenced for convictions under § 924(c).

## II. ANALYSIS

Fisher raises five issues on appeal. First, he argues the district court erred by failing to ask if he would like a jury trial regarding forfeiture. Second, he argues the district court abused its discretion by using the broad phrase "psychoactive substances" in his supervised-release conditions. Third, he argues his convictions under § 924(c) are invalid because Hobbs Act robbery does not qualify as a crime of violence. Fourth, he argues his written sentence is a nullity to the extent it conflicts with the sentence imposed at his sentencing hearing. Finally, he argues these errors require us to vacate his sentence and remand for a new sentencing hearing at which the First Step Act ought to apply.

### A. Forfeiture of Fisher's Firearm

Fisher argues that the district court violated Federal Rule of Criminal Procedure 32.2 by not asking Fisher whether he wanted a jury to determine the forfeitability of his firearm. The Rule requires:

> In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict.

Fed. R. Crim. P. 32.2(b)(5)(A).

This Rule is violated when a judge does not determine if a party wants the jury to decide whether certain property is forfeitable. *See United States v. Cherry*, 921 F.3d 690, 693 (7th Cir. 2019); *United States v. Ryan*, 885 F.3d 449, 454 (7th Cir. 2018). Because nothing in the record indicates the judge here considered or inquired whether Fisher would like to waive his right to a jury trial on the issue of forfeiture,[1] Rule 32.2(b)(5)(A) was violated.

But Fisher did not object to the forfeiture of his firearm. So, the forfeiture order will be vacated only if the district court's error affected Fisher's substantial rights. Fed. R. Crim. P. 52(b); *Ryan*, 885 F.3d at 454.

Determining forfeitability without inquiring whether a party would like to submit the issue to a jury does not affect the defendant's substantial rights when "no reasonable juror could have found there was not a sufficient nexus between the property and the offense." *Cherry*, 921 F.3d at 693 (quoting *Ryan*, 885 F.3d at 454). In *Cherry*, even though the judge violated Rule 32, the defendant's substantial rights were not

---

[1] We note that prior to trial, the judge asked the parties if they agreed to excise the forfeiture allegation from the indictment before it was read to the jury during *voir dire*. We do not understand this to be the district court inquiring about a waiver of a jury trial on the forfeiture issue.

affected because "Cherry was convicted of being a felon in possession of a firearm, and the firearm at issue in the forfeiture order was the one that Cherry possessed." *Id.*

The same logic applies here. Only one firearm was submitted into evidence: the Smith & Wesson pistol found along Fisher's escape route. The jury convicted Fisher of being a felon in possession of a firearm, and the judge ordered the forfeiture of any firearm used in Fisher's offenses. It logically follows that Fisher was required to forfeit the firearm that the jury must have found him guilty of possessing; indeed, he concedes this point. So, no reasonable juror could have failed to find a sufficient nexus between the pistol and Fisher's conviction for possessing a firearm as a felon. The error in this case therefore did not affect Fisher's substantial rights, and we will not vacate the forfeiture order.

*B. Fisher's Supervised-Release Conditions*

Fisher next argues that the district court abused its discretion by including a supervised-release condition prohibiting Fisher from purchasing, possessing, distributing, administering, or using psychoactive substances. He contends that the phrase "psychoactive substance" is vague and overbroad. But Fisher did not object to this supervised-release condition at his sentencing hearing.

So, we must preliminarily determine "whether the defendant intentionally relinquished the challenge" now presented. *See United States v. Flores*, 929 F.3d 443, 445 (7th Cir. 2019). If the defendant intentionally relinquishes an argument, that argument is waived, and we will not review it. *United States v. Tjader*, 927 F.3d 483, 485 (7th Cir. 2019) (citing *United States v. Bloch*, 825 F.3d 862, 873 (7th Cir. 2016)).

A challenge to supervised-release conditions is intention-
ally relinquished, and therefore waived, when:

> the defendant has notice of the proposed conditions,
> a meaningful opportunity to object, and [he] asserts
> (through counsel or directly) that [he] does not ob-
> ject to the proposed conditions, waives reading of
> those conditions and their justifications, challenges
> certain conditions but not the one(s) challenged on
> appeal, or otherwise evidences an intentional or
> strategic decision not to object.

*Flores*, 929 F.3d at 450.

Here, Fisher evidenced an intentional decision not to ob-
ject to the condition, despite meaningful opportunity to do so.
He had notice of the proposed supervised-release conditions
in the PSR he received prior to sentencing. *Cf. id.* at 449. The
district court confirmed that Fisher had an opportunity to re-
view the PSR before the sentencing hearing. *Cf. Tjader*, 927
F.3d at 485. Fisher objected to the offense-conduct descrip-
tions in his PSR but did not object to any of his supervised-
release conditions. *Cf. United States v. Brown*, 932 F.3d 1011,
1017 (7th Cir. 2019). And after the judge announced Fisher's
sentence, Fisher affirmatively declined further explanation of
the sentence and told the district court he had no objections.
*Cf. Flores*, 929 F.3d at 449.

Under our decision in *Flores*, Fisher has waived this argu-
ment and we will not review his challenge to the supervised-
release conditions.

### C. Fisher's Convictions Under § 924(c)

Fisher also appeals his three convictions under 18 U.S.C.
§ 924(c)(1)(A)(ii), for brandishing a firearm during a crime of

violence. He contends that Hobbs Act robbery—the crime during which Fisher brandished a firearm—does not categorically qualify as a crime of violence.

Fisher acknowledges that this issue is well settled in our circuit and that he raises it primarily for possible Supreme Court review. Indeed, we have repeatedly held that a Hobbs Act robbery is a crime of violence within the meaning of § 924(c)(3)(A). *See, e.g.*, *United States v. Anglin*, 846 F.3d 954, 965 (7th Cir. 2017), *vacated on other grounds*, 138 S. Ct. 126 (2017); *United States v. Rivera*, 847 F.3d 847, 849 (7th Cir. 2017); *United States v. Allen*, 702 F. App'x 457, 459 (7th Cir. 2017). We see no reason to revisit our prior holdings, so Fisher's § 924(c) convictions stand under this circuit's precedent.

### D. Discrepancies Between Fisher's Oral and Written Sentences

Fisher argues that the written judgment differs from the sentence announced at the hearing in two ways. First, in the written judgment, the supervised-release condition concerning psychoactive substances included the explanatory parenthetical suggested in the PSR. This parenthetical was absent from the oral sentence. Second, the written judgment stated that supervised release was being imposed on all seven counts. The sentence announced from the bench attached supervised release to only four counts.

We review a claim of discrepancies between the oral and written judgments *de novo*, "comparing the sentencing transcript with the written judgment to determine whether an error occurred as a matter of law." *United States v. Johnson*, 765 F.3d 702, 710 (7th Cir. 2014). If an inconsistency exists between an unambiguous oral sentence and the written judgment, the oral sentence controls and the written judgment should be

amended to reflect the oral sentence. *United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998); *see also United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005).

But not all differences between the written and oral sentences amount to inconsistencies. If the oral sentence is ambiguous or broad, we may use the written judgment as clarification, and the written judgment need not be amended. *Bonanno*, 146 F.3d at 512.

For example, in *United States v. Baker*, the defendant argued that the payment provisions of his supervised-release conditions should be vacated because the written judgment differed from his oral sentence. 755 F.3d 515, 528 (7th Cir. 2014). Baker's oral sentence directed him to pay for treatment programs as directed; the written judgment directed him to pay specific individuals and entities. *Id.* at 528 n.2. Although the two sentences differed, we did not vacate the written judgment because "[t]he specifications in the written judgment … are not inconsistent with an unambiguous provision" in the oral sentence. *Id.* The written judgment clarified the oral sentence by giving Baker specific instructions on whom he should pay for treatment. *Id.* So, there was no reason to amend the written judgment. *See Bonanno*, 146 F.3d 511–12.

As we explain below, we do not see an inconsistency between the oral and written iterations of the psychoactive-substances condition. But we do see an inconsistency in the number of counts to which the written judgment and oral sentence apply terms of supervised release.

*1. Psychoactive-Substances Condition*

First, the difference between the psychoactive-substances condition in the written judgment and that condition in the

oral sentence does not require correction. The judge orally announced that upon release, Fisher could not "knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances that impair a person's physical or mental functioning." The written judgment was more specific: "[Fisher] shall not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances *(e.g., synthetic marijuana, bath salts, Spice, glue, etc.)* that impair a person's physical or mental functioning." (Emphasis added).

Apart from the parenthetical in the written judgment, these two iterations are identical. And the added parenthetical is not inconsistent with the orally announced condition. The phrase "psychoactive substance" is ambiguous without any clarification. *See United States v. Colson*, 675 F. App'x 624, 627–28 (7th Cir. 2017) (discussing how prohibiting all psychoactive substances would prevent a defendant from using "sleeping pills, certain herbal supplements, and other legal substances"). For clarification, we can turn to the written judgment. *Bonanno*, 146 F.3d at 512.

There we see that the written judgment's parenthetical does clarify the oral sentence; it lists specific examples of covered psychoactive substances. *Cf. Baker*, 755 F.3d at 528 n.2. Though not perfect, this clarification mentions multiple illegal substances, narrowing the scope of the prohibitive condition. So, like in *Baker*, the additional language in the written judgment is not inconsistent with an unambiguous provision in the oral sentence. Instead, the addition seeks to clarify an ambiguous term in the oral sentence. Thus, the written judgment's version of the psychoactive-substances provision does not need to be amended to match the oral sentence.

However, we note that the district court retains the authority to amend conditions of supervised release "at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2). If it chooses, the court may clarify the psychoactive-substances condition, or rewrite it entirely. *Cf. Colson*, 675 F. App'x at 628 (recommending that the district court consider prohibiting *illegal* mood-altering substances rather than all psychoactive substances).

*2. Applicability of Supervised Release to Certain Counts*

The government agrees with Fisher that the written and oral sentences are inconsistent regarding which counts carry a term of supervised release. The oral sentence imposed concurrent supervised-release terms for Counts 1, 3, 6, and 9. The written judgment imposed supervised release "for a term of 1 year per count, concurrent." Since this section of the written judgment is inconsistent with an unambiguous pronouncement in the oral sentence, the oral sentence controls and the written judgment is a nullity to the extent it conflicts. *Bonanno*, 146 F.3d at 511. So, we will remand with specific instructions to amend the written judgment to adopt the language announced at Fisher's sentencing hearing, imposing terms of supervised release on Counts 1, 3, 6, and 9 only.

*E. Remand and the First Step Act*

Finally, Fisher claims that the alleged errors in this case warrant remand for a new sentencing hearing, allowing for a determination of whether the First Step Act would apply and shorten Fisher's term of imprisonment.

But we dictate the scope of remand. *United States v. Barnes*, 660 F.3d 1000, 1006 (7th Cir. 2011). If we remand to correct a discrete issue, we may remand with instructions to correct

only that error without reexamining other issues. *United States v. Purham*, 795 F.3d 761, 764 (7th Cir. 2015). Fisher concedes that a narrow remand would limit the district court from entertaining new arguments, including that the First Step Act applies. Appellant Br. at 36.

Here, we remand to correct one discrete inconsistency between the written and oral sentences. This correction requires only that the judge amend the written judgment; it does not require a new sentencing hearing. *See Alburay*, 415 F.3d at 790. So, no other issues should be addressed on remand. *See United States v. Polland*, 56 F.3d 776, 777–78 (7th Cir. 1995) ("[W]e have the power to limit a remand to specific issues or to order complete resentencing."). The district court therefore should correct the written judgment without addressing whether the First Step Act would apply and alter Fisher's term of imprisonment.

## III. CONCLUSION

Only one of the many errors Fisher alleged requires correction: Fisher's written and oral sentences impose terms of supervised release inconsistently, on different counts. The judgment of conviction is AFFIRMED, as well as the sentence imposed, except for the terms of supervised release. We therefore further REMAND WITH SPECIFIC INSTRUCTIONS for the district court to enter a corrected judgment that mirrors the oral sentence regarding the counts to which a term of supervised release attaches.