In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2865

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY DENNIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cr-00100-1 — **Sharon Johnson Coleman**, *Judge.*

ARGUED SEPTEMBER 11, 2024 — DECIDED OCTOBER 25, 2024

Before SYKES, *Chief Judge*, and BRENNAN and PRYOR, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Larry Dennis pleaded guilty to possession with intent to distribute cocaine base and marijuana. At his sentencing hearing, the government referenced photos of him pointing a firearm at a man and described the incident as an "armed robbery." Based on the photos and Dennis's post-arrest statements, the district court enhanced his sentence.

Dennis contests the sentence enhancement. He also argues that two of his supervised release conditions are inconsistent with the district court's pronouncements of his sentence. We affirm Dennis's sentence, after modifying one discretionary condition to reflect the parties' shared understanding.

**I**

Larry Dennis sold crack cocaine from his home in Markham, Illinois. Based on a tip from a confidential informant, the government began monitoring Dennis's activities via a pole camera aimed at his home. The pole camera captured multiple instances of what appeared to be drug deals. Local police arrested Dennis after executing a search warrant at his home and finding cocaine base, marijuana, drug paraphernalia, cash proceeds, and a loaded handgun. He was charged in Cook County with drug and firearm offenses and then released. Within two days the pole camera captured him engaging in similar drug transactions at his home. Federal and local law enforcement then executed a federal search warrant, finding another 11 grams of cocaine base and drug paraphernalia.

Dennis was indicted in the Northern District of Illinois. He eventually pleaded guilty to one charge of possessing with intent to distribute cocaine base and marijuana, in violation of 21 U.S.C. § 841(a)(1). Under the sentencing guidelines and based on the quantity of drugs found, the plea agreement set forth a base offense level of 24, with a criminal history category of II.

The pole camera had recorded Dennis pointing a gun at a man in December 2020. The government provided the defense pictures from the recording, but not the full video, first in its pretrial detention motion and then in other documents.

Also, beginning with its pretrial detention motion the government repeatedly characterized the event as an "armed robbery." After giving Miranda warnings, the government asked Dennis about the images in a recorded post-arrest interview. Dennis said he pointed the gun at the man because the man "shorted [him] on some money," but he "wasn't fitting to do anything to hurt him." At no point did Dennis ask for either the pole camera video or the post-arrest interview recording.

At the plea hearing, the government advocated for a two-level enhancement to the base offense level because Dennis had "made a credible threat to use violence." In the presentence investigation report (PSR) the probation agent disputed the adjustment, concluding that although photos showed Dennis "brandishing a firearm at a customer during a drug deal," there was "no evidence he actually used or threatened any violence other than holding the firearm." The government challenged this conclusion, arguing that pointing a handgun at a customer qualifies as a credible threat of violence. In his sentencing memorandum, Dennis objected to the characterization in the PSR and said he used the firearm to ward off an attack from his uncle, who allegedly had assaulted Dennis days prior.

At the sentencing hearing, the district court agreed with the government and applied the enhancement. The court "looked at the evidence," including "statements that … he made at the time of his arrest and that were presented at the time the Court took the plea," and "the photos that were included in the arguments." The court then applied additional enhancements and reductions and arrived at a total offense level of 27, which carried a guidelines range of 78–97 months.

After calculating the guidelines range, the district court considered and applied the sentencing factors of 18 U.S.C. § 3553(a) and imposed a low-end sentence of 78 months. The court focused on the need for specific and general deterrence, as well as the recurring nature of Dennis's conduct. It never expressly mentioned Dennis's firearm use during its § 3553 analysis but referred to the need to protect the public from his "prey[ing] on them, whether it's with drugs or whether it's with any type of violence."

The district court also imposed a number of discretionary conditions for Dennis's supervised release. The first at issue relates to alcohol consumption. The court prohibited Dennis from "excessive" alcohol use:

> It should be excessive, not any. He's legal age. So if you're out and you want to drink, if the Bears are losing, you can drink. Nobody's going to stop you from that, as long as you don't get behind the wheel of a car with over .08 blood alcohol level, and as long as you don't go out on the street committing any crimes while you're drunk.

The court's written judgment prohibited "excessive use of alcohol," defined as "having a blood alcohol concentration greater than 0.08."

The second disputed condition relates to a mandatory substance abuse treatment program. The district court implied at the hearing that Dennis would not need treatment, as it did not find him to have a substance abuse problem:

> You will participate at the direction of [a] probation officer in a substance abuse program, if

one is found to be needed. And that is after you get out. That's No. 9. So if not, then that doesn't count. So he doesn't need that. In fact, why don't we do this: Substance abuse, mental health assessment. He will participate in one assessment program, and then they can determine whether or not there's other services he needs, whether it's counseling, therapy.

But the written judgment requires Dennis to "participate, at the direction of a probation officer, in a substance abuse treatment program if one is found to be needed, which may include urine testing up to a maximum of 104 tests per year."

## II

On appeal Dennis contests his sentence in three ways. First, he claims the district court erred by applying the "credible threat of violence" sentencing enhancement. Second, he argues the district court improperly relied on the government's statements regarding the pole camera photos depicting an "armed robbery" when performing its § 3553 analysis. Third, he contends the discretionary conditions on the written judgment conflict with the district court's oral pronouncements at the sentencing hearing.

## A

Dennis challenges the district court's reliance on the pole camera images to enhance his sentence. He argues the government should have been required to submit the recording before the court could have considered them.

This court reviews de novo whether the district court followed proper procedures in sentencing hearings but reviews factual findings for clear error. *United States v. Gibbs*, 26 F.4th

760, 765 (7th Cir. 2022). And we "review a decision on the re-liability of evidence for abuse of discretion." *United States v. Moore*, 52 F.4th 697, 700 (7th Cir. 2022). The government must prove facts supporting a sentencing enhancement by a pre-ponderance of the evidence. *United States v. Yates*, 98 F.4th 826, 832 (7th Cir. 2024). District courts may consider inadmis-sible evidence during sentencing if that evidence is "well-sup-ported and reliable." *Gibbs*, 26 F.4th at 765. But the govern-ment's reliability threshold is "low." *United States v. Rollerson*, 7 F.4th 565, 570 (7th Cir. 2021) (quoting *United States v. Helding*, 948 F.3d 864, 871 (7th Cir. 2020)).

So long as the defendant objects to evidence at sentencing, the court cannot depend on unsupported arguments by the government. Dennis cites to *Gibbs* for this point. There, after police found methamphetamine in the defendant's car he was charged with drug possession. 26 F.4th at 763. While in jail, Gibbs directed two compatriots to obtain and sell metham-phetamine to raise money for his bond. *Id.* At the plea hearing, the government submitted, for the first time, that Gibbs had conspired to distribute nearly double the amount he was aware of. *Id.* The probation agent reported the same in the PSR but offered no facts to support the greater amount. *Id.* at 764. Only at the sentencing hearing did the government "blindside[] the defense with new and unsubstantiated alle-gations," alleging for the "first time in the two-and-a-half-year history of the case" that Gibbs had confessed to receiving a much higher quantity of the drug. *Id.* Gibbs's counsel ob-jected, which the court overruled, instead accepting the gov-ernment's statements as true. *Id.* at 764–65.

This court reversed Gibbs's sentence. Though the district court may base its sentencing decision on a reliable PSR, if a

PSR includes "'nothing but a naked or unsupported charge,' then a defendant's denial is enough to 'cast doubts on its accuracy.'" *Id.* at 766 (quoting *Helding*, 948 F.3d at 870). If "the only thing in the record" is the government's "eleventh-hour representation[] about what the evidence would show," the government has not met its burden of proof. *Id.*

But if the government references sufficiently trustworthy information at sentencing, the defendant must raise a significant question as to its reliability to overcome that showing. In *United States v. Heckel*, the defendant's PSR stated he had been imprisoned for a prior offense for 19 months, but a lower sentencing range was available if he had been imprisoned for a maximum of 13 months. 570 F.3d 791, 795 (7th Cir. 2009). Heckel only "recalled" spending six months in prison, and later statements by his counsel conflicted with even that recollection. *Id.* at 795–96. The court rejected his sentencing challenge, stating he had produced no "documentary evidence" to challenge the PSR, rendering any disagreement a "bare denial." *Id.* at 796.

Here, the government provided the photos to the court and to the defense immediately after Dennis's arrest in February 2021, using the phrase "armed robbery" to characterize the events depicted in the photos. Rather than a "naked or unsupported charge" or "eleventh-hour" tactic, the photos served as documentation for the government's enhancement request. *Gibbs*, 26 F.4th at 766. The government's submission was thus not "the only thing in the record." *Id.* It was not until August 2023—two and a half years after the government put him on notice—that Dennis disputed this version of events. The pole camera images thus satisfied the government's initial reliability threshold.

The government was not required to submit the full pole camera video, rather than just the photos. Dennis cites no authority that undisputed documentary evidence is unreliable simply because more contextual evidence may exist. Indeed, this would raise the government's "low" burden of showing reliability. *Helding*, 948 F.3d at 871.

A defendant must "create[] real doubt as to the reliability" of adequately supported evidence. *United States v. Sunmola*, 887 F.3d 830, 839 (7th Cir. 2018) (quoting *Heckel*, 570 F.3d at 795–96). This "real doubt" is usually established by introducing "documentary evidence." *Heckel*, 570 F.3d at 796. Dennis claimed only that there was an "arrest report" from two days before the photos were taken, memorializing that Dennis's father and uncle "assaulted [him] and took his money." Dennis never produced this document. Even if he had, that would not have created "real doubt" that the video depicted an armed robbery, rather than Dennis warding off an attack from the man who previously assaulted him. Because the government met its burden and Dennis failed to rebut it, the district court did not erroneously credit the photos.

Dennis also argues the district court improperly relied on his post-arrest interview, without requiring the recording itself to be submitted. The government did not raise his interview statements until two days after the plea agreement, nor did it provide any evidence to the court corroborating them.

When the government asserts "'nothing but a naked or unsupported charge,' then a defendant's denial is enough to 'cast doubts on its accuracy.'" *Gibbs*, 26 F.4th at 766 (quoting *Helding*, 948 F.3d at 870). So, even assuming the government's contentions here were unsupported, Dennis still needed to register a bare denial of them to "shift the burden of proof

back to the prosecution." *Id.*; *see also Helding*, 948 F.3d at 870; *United States v. Marks*, 864 F.3d 575, 580 (7th Cir. 2017). But Dennis failed to dispute the existence of his post-arrest statements in his objections to the PSR, at the plea hearing, or at the sentencing hearing, all of which occurred after he was alerted of the statements.

To be sure, Dennis's briefs repeatedly state his version of events, which conflicts with the "armed robbery" theory and faults the government for not producing the interview recording. And he contends he disputed the existence of the alleged confession by contesting the confession's underlying events.

But the two are not the same. A defendant must articulate his "objection with enough specificity to give the opposing party and the trial judge a fair opportunity to consider the objection, debate it, and rule on it." *United States v. Echols*, 104 F.4th 1023, 1029 (7th Cir. 2024); *see Gibbs*, 26 F.4th at 764 (counsel objecting specifically to the defendant "making the alleged confession"). Dennis's general objection to the facts underlying the statements in his Mirandized interview was not enough to put the district court or the government on notice that he disputed the existence of those statements. Without disclaiming them, the interview went uncontroverted. And the sentencing court "may accept an undisputed portion of a presentence report as fact." *Gibbs*, 26 F.4th at 766. Thus, the district court did not err by relying on the post-arrest statements, rather than Dennis's late-developed self-defense theory.

**B**

Next, Dennis argues the district court improperly relied on the government's description of the December 2020 event

as an "armed robbery" when pronouncing his sentence under § 3553(a).

Procedural challenges, such as the district court's "selecting a sentence based on clearly erroneous facts," are reviewed de novo. *United States v. Hendrix*, 74 F.4th 859, 866 (7th Cir. 2023) (quoting *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008)). A defendant challenging the sentencing court's reliance on improper information must show "first, that information before the sentencing court was inaccurate, and second, that the sentencing court relied on the misinformation in passing sentence." *United States v. Williams*, 106 F.4th 639, 656 (7th Cir. 2024) (quoting *United States v. Propst*, 959 F.3d 298, 304 (7th Cir. 2020)).

This challenge fails for two reasons. First, Dennis cannot show the information was "inaccurate." Illinois law defines armed robbery as taking property "from the person or presence of another by the use of force or by threatening the imminent use of force" "while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm." 720 ILL. COMP. STAT. 5/18-1(a)-(b)(1). The pole camera images show Dennis aiming a firearm at another person. In his post-arrest statements Dennis said he aimed the gun at the man because he "shorted [him] on some money." The elements of armed robbery are thus met, assuming the district court relied on the government's version of events. And if the government's version was factually accurate, there is no legal error, as inaccurate information is a prerequisite to establishing improper reliance. *Williams*, 106 F.4th at 656.

Second, even if the government's contention was inaccurate, Dennis has not shown that the court relied on it. Reliance is a "low bar," but the defendant must show "the false

information was 'part of the basis for the sentence.'" *Id.* (quoting *United States v. Miller*, 900 F.3d 509, 513 (7th Cir. 2018)). Reliance occurs when "the court gives explicit attention to it, founds its sentence at least in part on it, or gives specific consideration to the misinformation before imposing sentence." *Miller*, 900 F.3d at 513 (quoting *United States v. Chatman*, 805 F.3d 840, 844 (7th Cir. 2015)). A defendant need not show prejudice if he can establish reliance. *Id.*

In *Miller*, the defendant had only five prior felony convictions, yet the district court repeatedly stated at sentencing that he had six. *Id.* at 511. The district court said the defendant's criminal history "was one of the two 'biggest' factors justifying the sentence imposed." *Id.* at 514. We remanded for resentencing because the district court expressly based its sentence on the mistaken number of prior felonies, not just the defendant's "overall lengthy criminal history generally." *Id.*

But if the government merely mentions inaccurate information on which the court does not expressly found its sentence, there is no reliance. In *Chatman*, the defendant, convicted of heroin distribution, had two prior convictions for drug possession and two for driving under the influence. 805 F.3d at 842. At sentencing, the government submitted that he had "several" convictions each for possession and DUIs. *Id.* On appeal Chatman argued that "several" means "more than two," so the government improperly influenced the district court by inaccurately describing his criminal history. *Id.* at 843. This court ruled that there was no error, even assuming Chatman correctly interpreted the word "several." *Id.* at 844–45. He could not establish actual reliance because the sentencing judge, rather than directly addressing the number of convictions, only generally referenced Chatman's "controlled

substance convictions" and "alcohol, drug, [and] driving problem." *Id.* at 845.

Here, Dennis cannot establish reliance. The district court said:

> The hope is also, again, to keep the public from having you be in a position that you prey on them, whether it's with drugs or whether it's with any type of violence, the public has to be safe from you until you get yourself together.

The court did not expressly rely on the government's "armed robbery" theory when fashioning Dennis's sentence, making this case like *Chatman*, not *Miller*. Further, the court had Dennis's full criminal record before it. In Dennis's pretrial detention order, the magistrate judge described his "lengthy criminal history," involving aggravated vehicular hijacking, domestic battery, and aggravated unlawful use of a weapon. So, the district court viewed the "larger context of his extensive criminal" history, rather than the isolated December 2020 incident, when passing its sentence. *Chatman*, 805 F.3d at 845.

Dennis construes the district court's statement differently. To Dennis, when the court said it needed to protect the public from "violence," coupled with its directive for Dennis to "pull [himself] together," the court could only be referring to a current tendency toward violence. This reads too much into the court's statement, though, which appears to describe the general nature of Dennis's past convictions, rather than exhibit a "genuine misunderstanding" of the evidence. *United States v. Clayborne*, 105 F.4th 965, 972 (7th Cir. 2024).

Contrary to the judge "restat[ing]" the inaccuracy multiple times and relying on an erroneous fact as "one of the two

'biggest' factors" for the sentence, the district court here alluded only briefly to Dennis's violence. *Miller*, 900 F.3d at 513–14. The court discussed at length Dennis's involvement in the "circle of drugs and guns," as well as his need for deterrence. This emphasis dwarfs the single line about Dennis's violent history. The "court's complete discussion shows" this isolated statement "gets swallowed by the broader point—[Dennis's] recidivism—on which the court actually relied." *Williams*, 106 F.4th at 657.

## C

Dennis argues finally that the district court's written judgment conflicts with two discretionary conditions orally pronounced at sentencing. These concern the recommendation for substance abuse treatment and prohibition against excessive alcohol use.

We review de novo "a claim of discrepancies between the oral and written judgments." *United States v. Fisher*, 943 F.3d 809, 816 (7th Cir. 2019). "An unambiguous oral pronouncement always trumps the written judgment," but we can "refer to the written judgment to resolve" any ambiguity. *United States v. Harris*, 51 F.4th 705, 721–22 (7th Cir. 2022). If the written judgment contains an error, we may either amend it without remanding to the district court, or remand for the purpose of correcting the written judgment. *See United States v. Sanchez*, 989 F.3d 523, 547 (7th Cir. 2021) (no remand); *Fisher*, 943 F.3d at 817 (remand).

Dennis contends the sentencing court orally pronounced that he need not participate in a substance abuse treatment program, but the written judgment requires one at the probation officer's discretion. The government does not dispute this

inconsistency and need for amendment. The district court said, "he doesn't need" a substance abuse program and that "[h]e will participate in one assessment program, and then they can determine whether or not there's other services he needs, whether it's counseling, therapy." Yet the written judgment requires Dennis to participate in a substance abuse program.

Here, the court made an "unambiguous" statement as to Dennis's lack of need for substance abuse treatment, which must override the written judgment. *Harris*, 51 F.4th at 721–22. The government suggests alternative language for the condition, which Dennis approves: "You shall participate, at the direction of the probation officer, in a mental health assessment." Because "we are confident that we can tell what the district court intended," we order that discretionary condition #9 of the written judgment be amended to reflect the government's proposed change. *Sanchez*, 989 F.3d at 547 (quoting *United States v. Smith*, 906 F.3d 645, 651 (7th Cir. 2018)).

The second alleged error in the written judgment relates to discretionary condition #7, forbidding "excessive" alcohol consumption. Dennis submits that the district court only prohibited him from engaging in criminal or unsafe activity while intoxicated. Yet the written judgment prohibits him from having a blood alcohol concentration over 0.08, regardless of his activities.

Context is relevant here. The PSR originally recommended Dennis refrain from "any" alcohol. But at the hearing, the probation officer told the district court he meant to check the "excessive" box, which defaults to prohibiting defendants from ever having a blood alcohol concentration over 0.08. Explaining to Dennis what "excessive" meant, the court clarified he

was not permitted to "get behind the wheel of a car with over .08 blood alcohol level" or "go out on the street committing any crimes while" drunk.

Though the district court elaborated on what "excessive" meant, it never signaled that it was overriding the default condition.[†] "At best, the district court's oral statements were ambiguous, and the written judgment merely clarified that ambiguity." *Harris*, 51 F.4th at 722.

*       *       *

After finding Dennis presented a "credible threat of violence," the district court did not err in enhancing or pronouncing his sentence. As explained above, we modify discretionary condition #9 of the written judgment to reflect that Dennis engage in a mental health assessment at the direction of his probation officer. In all other respects, the district court is

AFFIRMED.

---

[†] As the government pointed out at oral argument, Dennis's interpretation of these statements by the district court would render mandatory condition #1—prohibiting Dennis from committing any other crimes—superfluous. *See* Oral Argument at 14:21–14:50.